## No. 5154.

### JOHN MOYLAN vs. CITY OF NEW ORLEANS.

A party contrac ing with the city of New Orleans for grading and curbing banquettes, does so at his own risk, and if, owing to some informalities in the contract, he fails to recover from the front proprietor, the amount of the City Surveyor's Bills against them, which he has accepted in payment of his work, he has no recourse against the City.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J.*

R. King Cutler for Plaintiff and Appellant.

Samuel P. Blanc, Assistant City Attorney, for Defendant and Appellee :

The points upon which we rely are, then, these :

First—That all actions against the city of New Orleans, for work or labor done, either under a contract, or for damages, or extra work, are prescribed, unless commenced within one year from the time the contract was to be performed. R. S. 2822, and Act No. 91 of 1858.

Second—That under twenty-fourth section of the city charter of 1870, Act No. 7, Extra Session of 1870, the city could not contract to improve, pave, grade, or lay banquettes at its own costs, but that the whole of said cost had to be borne by the front proprietor.

Third—That one who contracts under said section twenty-four, to do work on banquettes, must look exclusively to the front proprietor for the payment, and that the city cannot enter into an engagement to the contrary.

Fourth—That the plaintiff has engaged with reference to said law, and has expressly contracted to look to the front proprietors, and to pretend to nothing against the city in case of non-payment, recognizes and declares the law, and cannot afterward seek payment at the hands of the city on the bills against the abutting proprietors.

———

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff claims that, under a contract with the city of New Orleans, entered into in November, 1870, he has filled, graded, and prepared the ground on St. Charles Avenue, between Toledano and State streets, to fit it to receive the pavement of Byrnes' Improved Patent Banquetting, which was to be laid down by the patentees, and that by the labor so done and materials thus furnished, and for other items, he is entitled to recover from the city of New Orleans the sum of $2205 74.

An examination of the contract relied upon by the plaintiff shows that two modes of payment were provided for.

In the first place, it was understood, that if the appropriation made by the city in the annual budget were exhausted, when a certificate of compliance with his contract would issue to the contractor, he would not ask a warrant until after a fund was provided for in the budget of the following year.

In the second place, it was agreed that the city would prepare the proper bills against lot owners fronting the work, deliver them to the contractor, and that he would proceed to their collection, even judicially, if necessary, but that, by the delivery of those bills, the city would be released from all obligations to him.

The contract reads :

"On the completion and reception of the work, payments shall be made by the property-holders in the city surveyor's bill in conformity with section 24 of the city charter, *and the city shall not be held responsible or liable for any of them, should the same not be paid,* and said contractor shall be subrogated to all the rights of the city to seize and sell the property in case of non-payment of any or all of said bids."

Besides: "Said Mayor promises for and obligates the city of New Orleans to have the proper and legal bills for such work made out and delivered by the city surveyor unto said Moylan, who shall collect said bills according to section 24 of the city charter, at his own cost and expense, hereby releasing the city from any and all responsibility or liability for any part of said bills, and being subrogated to any and all rights of the city of New Orleans in the premises."

It is impossible to conceive how, under such terms and conditions, the plaintiff ever imagined that the city could be held responsible *to* *him*.

We are at a loss to understand why the first provision, unexplained as it is by the record, was inserted in the contract, for it is evident, from the reading of section 24 of Act 7 of 1870, which is the charter of the city of New Orleans, that it never entered the mind of the Legislature that the city should be responsible for such improvements. The law is clear that the whole cost of said banquettes so made should be borne by the owners of real property fronting on said banquettes in equal proportions according to the running foot.

As the contractor was to be entitled to payment for his work and materials, it was nothing but just that he should become the transferree of the claims of the city against such owners. This explains the second provision satisfactorily.

The two modes of payment could not co-exist with the stipulation found in the second provision. Leaving out of view section twenty-four of the charter, all that could be said is, that Moylan was left to his option in the matter.

He received it. He thought it more advantageous not to wait for the budget appropriation, and preferred to take the bills against the front proprietors.

The record shows that he instituted on those bills quite a number of suits against those who refused payment, and whom he treated as delinquents ; but that judgments were rendered in their favor "because, says plaintiff's brief, the city had failed to give the proper advertisements for bids."

Moylan contends that he is not responsible for this omission on the part of the municipal authorities. This is an error. He dealt with the city at his risk and peril. The omission, if any, was *anterior* to the date of the contract. By his accepting a transfer and subrogation from the city, there was a novation of creditor, an l the defenses which could have validly existe l against the transferrer coul l well be urged against the transferree.

From that admission we have authority to infer that the contract upon which he rests his claim was illegally formed by the city, and is a

nullity, on account of the non-observance of legal requirements pre-
scribed by law as conditions precedent for the validity of any contract,
the provision of the law on such subject being *prohibitory*, and not
merely directory. 21 A. 143.

But, be that as it may, it is clear that by accepting the bills under
the conditions of release found in the contract the plaintiff has made
the claims his own, and has completely discharged the city from all lia-
bility toward him.

To make its case still more certain, the city filed the plea of pre-
scription of *one* year, which the law sustains. R. S. 2822 ; Act No. 91 of
1858 ; 27 A. 310.

The year began to run after the ten days within which the work was
to be begun, viz., on December 5th, 1870. The work was to be com-
pleted within three months, viz., March 5th, 1871. The citation in this
case was served on March 9th, 1872.

It is therefore ordered that the judgment appealed from be affirmed
with costs.