NICHOLLS, J.
The plaintiff, Henry J. Bruning, alleges that the city of New Orleans is justly and truly indebted unto' him in the full sum of $2,583.95, with 6 per cent, interest thereon from September 16, 1896, until paid, and the further sum of $425.90, with legal interest thereon from judicial demand until paid, and all costs of this suit, for this, to wit:
That the city of New Orleans, duly authorized and empowered thereto by its charter and under and by virtue of Ordinances 10,884, 11,007, 11,626, and 11,987, C. S.,.duly adopted by the council of the city of New Orleans, did through - John Fitzpatrick, then mayor of the said city, make and sign two notarial acts of contract with petitioner, both passed before J. D. Taylor, notary public and then city notary, on March 18, 1896, for the construction of brick sidewalks and all work
incidental and necessary thereto, one on both sides of David street, from Canal to Orleans street, and the other on both sides of Bienville street, from Broad street to Carroll-ton avenue, all in said city of New Orleans. That petitioner complied with all obligations upon him under the said contracts, and did all of the work required of him and' provided for in the said contracts to the satisfaction of the city of New Orleans. That all of the said work upon its completion was duly accepted by the city of New Orleans, by and through its proper officers, the city engineer and commissioner of public works, who, on September 13, 1896, issued to petitioner certificates against front proprietors upon the said streets for the proportion chargeable to each property under the said respective contracts. That among the certificates so' issued to petitioner under the Bienville street contracts were two bills or certificates — one, No. 74, for $997.16, against the property of Geo. Reders-heimer, on the lower side of Bienville street, between Olark and Genois street's, and the other bill or certificate, being No. 86, for $1,-187.19, against the property of F. R. Richardson, on the lower side of Bienville street, between Cortez and Scott streets, and all within the limits of the work provided for in the said contract. That subsequent to the decision of the Supreme Court of this state in the Watt Case, 51 La. Ann. 1345, 26 South. 70 the said city officials revised and corrected the amounts of said bills or certificates to conform to that decision, and issued to petitioner on February 9, 1901, corrected bills or certificates — one, No. 74, for $978.37, in lieu of the original bill No. 74, and one, No. 86, for $1,147.23, in lieu of the original certificate of the same number, all of which certificates or bills stipulated for interest at the rate of 6 per cent, per annum from the date of the original bill until paid. That by act before W. M. Gurley, notary, on November 24, 1897, and duly registered in conveyance office, said F: R. Richardson sold and trans *319 ferred to the said Geo. Redersheimer the said property belonging to the said Richardson on the lower side of Bienville street, between Cortez and Scott streets, upon which the Said paving bill No. 86 operated as a lien and privilege. Whereupon the said George Redersheimer, as owner of both properties, brought suit against petitioner in the civil district court for this parish, entitled “Geo. Redersheimer v. Henry J. Bruning,” under No. 54,982 of the docket of said court, division A, for the cancellation of both of said paving claims and the inscription thereof in the mortgage office of this parish, where petitioner had duly and seasonably caused same to be recorded in order to preserve his lien in accordance with law. That said cause, after numerous pleadings and after due trial and argument, was decided on June 19, 1903, by the civil district court, against petitioner herein, and ordering the cancellation from the mortgage records of both of said paving claims, holding that neither the said properties nor the owners thereof were liable therefor. That petitioner, defendant in that cause, prosecuted a suspensive appeal from said judgment to the Supreme Court of this state, where the cause bore No. 15,028 of the docket of said court, and after full hearing and argument said appellate court rendered a decree affirming the judgment of the civil district court, and on June 29, 1904, refused a rehearing applied for by petitioner herein, and the said judgment and decree of the Supreme Court thereby became final. That under the hereinabove referred to contract for the construction of brick sidewalks on David street, .after the completion by petitioner and acceptance by the city of the work required under this contract, the same city officials above referred to issued to petitioner a paving bill or certificate, No. 8, dated August 18, 1896, for the sum of $474.85, against the property of the estate of D. E. Barrett on the river side of David street, between Bienville and Conti streets, and subsequently, on February 9, 1901, in order to conform to the ruling in the Watt Case, issued a corrected certificate, bearing the same number, against the same property, for the sum of $457.35, which amount likewise stipulated to bear interest at 6 per cent, per annum from date of the original certificate, and to preserve the lien and privilege accorded by law petitioner duly and seasonably caused the recordation of said paving claim to be made in the mortgage office of this parish. That petitioner brought suit for the enforcement of the said paving claim against the said property in the civil district court for this parish in the suit entitled “Henry J. Bruning v. Widow Madeleine Braun Barrett et .al.,” No. 55,146 of the docket of the said court, division E, and subsequently transferred to division D, and after due trial and argument judgment was therein rendered by said court on November 23, 1903, in favor of petitioner for the sum of $268.88, but restricting execution to a certain portion of the property, and with a judgment of nonsuit in all other respects, from which judgment said defendants prosecuted a suspensive appeal to the Supreme Court of this state, where it bore No. 15,107 of the docket of said court, and after full hearing and argument in the said appellate court a decree was rendered reversing .and setting aside the said judgment of the civil district court, and directing that judgment be entered against petitioner and in favor of the said defendants, and said decree became final on June 30, 1904, when said court refused the rehearing applied for by petitioner. That in the Supreme Court both of the above entitled and numbered causes were heard and argued together, the same questions being involved, and the decree in the Barrett Case, 113 La. 349, 36 South. 991, was rendered for the reasons set forth in the Redersheimer Case, 113 La. 343, 36 South. 990.
Petitioner avers that the city of New Orleans was specially empowered by her char-' *321 ter to enter into such contracts for the paving of sidewalks within the limits of said city, and that in the exercise of the said power the city of New Orleans proceeded in the manner and form pointed out by law, and that all the requirements of the charter of the city of New Orleans, which specify in detail the method of procedure, were complied with, and that the said contracts so made by petitioner with the said city were and are legal and valid and binding contracts, upon the faith of which petitioner furnished the labor and material necessary to do all the work so contracted for, and the said work was done to the entire satisfaction of the city of New Orleans and the officers of the said city, the city engineer and commissioner of public works, designated by the charter and the said contracts to have supervision .and control therefor, and that all of the said work so done by petitioner and under the said contracts was upon its completion duly accepted by the city of New Orleans by its said officers. That the Supreme Court of this state in the decisions referred to practically maintained and upheld the validity of the said contracts as having been entered into after due compliance with all the requirements of the charter of the city of New Orleans, but held that the particular property owners in these cases, and their property otherwise liable for the payment of the said paving claims above recited, were not so liable because of the failure of the city of New Orleans and of the executive officers thereof to give to them the notice provided for in Ordinance No. 8,422, G. S., adopted by the council of the city of New Orleans in 1893, which notice was a different and further notice from that provided in the statute, and which statute, after specifying the notice required, provided that no' further notice should be required. Act No. 142, p. 179, of 1894. That said notice had not been received by the owners of said property was specially pleaded and proved in each of said cases, and the Supreme Court held that because of such failure or neglect upon the part of the executive officers of the city of New Orleans the said property owners could not be required to pay the said paving assessments, nor was their property liable therefor.
Petitioner represents that under the then charter of the city of New Orleans the city of New Orleans levied assessments to pay for the said local improvements, and in the said contracts and the said certificates transferred the said special assessments to petitioner as contractor, subrogating him to all of the rights of the city of New Orleans against the various front proprietors and against their property, with the rights and the obligation upon petitioner to proceed directly and in his own name to the enforcement of the collection of the said special assessments represented by the paving bills or certificates referred to, and that petitioner has collected all of the said assessments represented by bills or certificates so issued to him except those hereinabove referred to and described, and that as to these he has made all legal efforts possible, and by the decree of the Supreme Court of this state referred to, and their refusal to grant a rehearing, that the matter has become final, and petitioner has no further remedy or recourse against the said property or the owners thereof under the said assessments so levied by the city of New Orleans, by reason of the neglect and failure on the part of the city of New Orleans or of her executive officers to give the said notices to the then owners of said properties. That by reason of the foregoing the city of New Orleans is indebted unto petitioner under the said contracts for the amount of said certificates or bills hereinabove referred to, together with 6 per cent, per annum interest thereon from the date of the original issuance thereof, and all costs of these proceedings, and, if it should be held that said city is not liable therefor under said .contracts, then petitioner alleges the amount of said certificates and such in *323 terest as the amount of the damages suffered by him by reason of such failure and neglect on the part of said city, her officers and employes, and in addition the costs incurred and paid in said litigation as hereinafter set forth. That under the said contracts petitioner was authorized and required to proceed against the said property holders. That he had done so in the legal proceedings referred to, and has exhausted his remedy against them and said property, and that he has incurred and paid costs and expenses in the said litigation amounting to $425.90, for which he would have recovered judgment against the said litigants and their property, had he been successful in said litigation, as he would have been, having finally won both cases upon all other points made therein, except for the neglect and failure of the city and her officers to give the notices provided for in the said Ordinance No. 8,422, C. S., and that by reason thereof said city of New Orleans is liable and responsible to petitioner for the amount of all of said costs and charges so incurred and paid by petitioner in the said suits above referred to, in addition to the amounts of said certificates and interest. Petitioner specially refers to, as part hereof, the entire proceedings had in both of said suits, both in the civil district court for this parish and in the Supreme Court of the state, and especially the said contracts, ordinances, certificates, and judgments and opinions and decrees in said causes. Petitioner alleges amicable demand in vain.
In view of the premises, petitioner prays that the city of New Orleans, through its proper officer, be duly cited to appear and answer hereto and after due proceedings had there be judgment in favor of petitioner and against the said city of New Orleans in the aforesaid sum of $2,582.95, with 6 per cent, per annum thereon from September 13, 1896, until paid, and the further sum of $425.90, with 5 per cent, interest thereon from judicial demand, and for all costs of these proceedings, and for all general and equitable relief.
The city of New Orleans, defendant herein, for exception to plaintiff’s petition, pleaded that same disclosed no cause of action, and prayed that the exception be maintained, and plaintiff’s suit dismissed, at his cost.
Defendant, reserving the benefit of the exception heretofore pleaded, for answer to plaintiff’s petition, denied all and singular the allegations therein contained, except such as might be thereafter admitted. It admitted: That it entered into certain contracts with plaintiff for the construction of brick sidewalks, etc., on David and Bienville streets in the city of New Orleans, the whole as would more fully appear by reference to certain copies of said contracts executed before J. D. Taylor, notary, which it annexed and made part of its answer.
That under the terms of said contracts the liability of the city of New Orleans was limited to work done on wings, crossings, and crosswalks at intersections, which liability has been long since discharged by the city of New Orleans. That under express provisions of said contracts it was specially understood and agreed that the balance of the paving work was to be paid by the owners of property fronting on said sidewalks in proportion to their respective frontage, and it was particularly agreed that said city of New Orleans should not be held liable or responsible for any bills due by these abutting property owners, should same not be paid.
That, if said contractor has been unable to collect his bills, the city of New Orleans was in no wise responsible in the premises. That it was not a party to any litigation between said contractor and the property owners referred to in plaintiff’s petition, and was never called upon by said contractor to participate therein, and that all of said proceedings and judgments of court referred to by plaintiff are, in so far as the city of New Orleans is concerned, res inter alios acta, and not binding upon respondent •
*325 In view of the premises, defendant prayed that plaintiff’s demand be rejected, and his .suit dismissed, at his cost, and for general relief.
Defendant also pleaded, in bar of plaintiff’s demand, the prescription of one and five years, praying that said plea of prescription be maintained, and plaintiff’s suit be dismissed, at his cost.
The court, considering the law and the evidence to be in favor of the defendant, ordered, adjudged, and decreed that there be judgment in favor of defendant, and against plaintiff, rejecting said plaintiff’s demand, at his cost.
Plaintiff appealed.
This suit results from the decisions rendered in this court in the cases entitled “H. J. Bruning v. Estate of Barrett,” 113 La. 349, 36 South. 991, and “George Redersheimer v. H. J. Bruning,” 113 La. 343, 36 South. 990. The question at issue in those cases was the right of Bruning, a private contractor, under contracts with the city of New Orleans for paving sidewalks on David and on Bienville streets, to recover from certain front proprietors on those streets the amount of their proportion of the cost of the work done under the contracts and accepted by the city, which amount was represented by paving certificates issued by the city authorities for the work. The decisions of the court were against the contractor because a certain notice, required by an ordinance of the city to be given to each front proprietor, had not been given to those particular front proprietors. In consequence of those decisions the contractor has brought the present action against the city of New Orleans to recover the amount of the certificates sued upon in the Redersheimer and Barrett suits, together with the costs which would have followed a judgment in favor of the contractor, all of which he would have recovered, but for the alleged neglect of .a city official.
The facts are not disputed. The question submitted to the court is the liability of the city of New Orleans under the law and the contracts. The present action is one substantially brought against the city under article 2046 of the Civil Code; it being claimed that the city, transferring to plaintiff paving certificates as representing claims against the properties fronting on the streets covered by the contracts, which are secured as to their payment by privilege on those properties, warranted the validity and existence of the things transferred and of the title and rights of the transferror to make the transfer. The prescriptions pleaded by the city do not apply to a case of this character. The contracts between the city and the plaintiff were entered into in March, 1896.
The .charter of the city at that time was contained in Act No. 20, p. 14, of 1882. The charter was amended by Acts Nos. 114 and 119, pp. 211, 217, of 1886, and Act No. 142, p. 179, of 1894. The latter act (Act No. 142, p. 179, of 1894), in its first section, declares that Act No. 119, p. 217, approved July 8,1886, entitled “An act to amend an act,” be amended and re-enacted as to read as follows :
“The city council of New Orleans may in its discretion provide for the paving of any street or portion thereof at the expense of the whole city and may thereupon force, impose and collect of the front proprietors of lots fronting on said street or streets a special assessment in proportion to frontage of three-quarters of the cost of said improvement and such local assessment shall have a first privilege superior to vendor’s lien and privilege and over all other privileges.”
The other one-fourth, in addition to intersections, shall be paid for by the city.
The second section declares that the council may in its discretion provide for the paving of any banquette or sidewalk, the whole cost of which, as well as the intersections, to be paid by the front proprietors, in proportion to the frontage owned by each, upon completion of the work.
The cost of said banquette or sidewalk *327 shall have a first privilege superior to vendor’s lien and privilege, and over all other privileges and mortgages on the property fronting on said sidewalk.
The third section declares that a two-thirds vote of the city council shall be necessary to pass any paving or banquette ordinance, and, whenever the council shall deem it necessary to take any such action, notice of such intention shall be published in the official journal once a week for four weeks; no further notice being required.
On December 5,1893, the city council adopted Ordinance 2,860, which reads as follows:
“That on and after the passage of ordinances of the city council giving notice of its intention to have the sidewalks on any street in the city of New Orleans paved, under the provisions of Act 119 of 1886, notices shall be officially given to all property owners on the streets prior to any further action in relation to the banquettes on such streets as may be mentioned in the ordinance, excepting the publication of the ordinance according to law.”
The contracts between the plaintiff and the city contained the following clauses:
“All costs of the paving herein contracted for in front of the property bordering thereon shall be paid for by the owners thereof according to frontage, and bills for same shall bear on such property as a first privilege superior to the vendor’s lien and all other privileges and mortgages, and the city of New Orleans hereby sub-rogates said contractor to all its rights to seize and sell the property in case of nonpayment of any or all such bills, either in whole or in part; but it is understood and agreed that the city of New Orleans shall not be held liable or responsible for any such bills, should any of them be not paid. * * * The whole of the specified work to be done without any expense whatever to the city of New Orleans, excepting for the wings, crossings, and crosswalks at intersections, which shall be paid for by the city of New Orleans.
“Certificates shall be issued on completion of each two blocks of the work contracted for, and shall bear interest at the rate of 6 per cent, per annum from their respective dates until paid.
“That portion of the work which is to be paid for by the city of New Orleans shall be paid out of item ‘Reserve Fund of 1896,’ item ‘Sidewalks and Paving Contracts.’ ”
The brief filed on behalf of the plaintiff is prefaced by the following syllabus :
“When a contractor for a local improvement, under a contract with a municipal corporation having the power to contract, and proceeding under and in accordance with its specific charter provisions, who, after completion of the work and acceptance by the city, exhausts his-remedy against particular property owners under paving bills, issued by the city, evidencing a local assessment operating as a first privilege on the land, and transferred to the contractor by the city with subrogation of its rights to have the property seized and sold to enforce payment, and it is held by the court of last resort that neither the front proprietor nor his land is in any way liable because of neglect of the city to give to the property owner, in addition to the notices prescribed by the charter, another notice, provided for in one of its mere ordinances, ‘to be given after the council had ordered the work to be done,’ the city is liable to the contractor for the amount of such particular paving claims, with interest and costs.
“And this is so, even if a clause in the contract provides that the city shall not he held' liable or responsible. The meaning and intent of such clause is merely to exclude any warranty for the amount of the paving claim.
“Such a clause is equivalent to ‘without recourse,’ and does not exclude warranty as to the existence of the thing; that is, that it is a real, existing claim against the land of the front proprietor. The city, agreeing to transfer a paving claim, necessarily warrants that it is such, if it is not, but merely ‘a blank piece of paper,’ the city is liable.”
Counsel say:
“The charter of the city of New Orleans under which the contracts were made authorized the city to make such paving contracts, and specially provided for the kind and manner of notices to be given and other formalities to be complied with, in order that such a contract may be valid. See Act No. 20, p. 30, of 1882, § 37, as amended by Act No. 119, p. 217, of 1886, and Act No. 142, p. 179, of 1894.
“In the contracts in question there • was a full compliance with each and every requirement of these acts. All notices were given in manner, form, and substance as required by the acts of the Legislature in granting the power to the city and providing minutely for the manner of its exercise. There is no dispute as to this.
“Now, the city council, by Ordinance No. 8,422, O. S. (adopted prior to 1894), provided another and different notice, which it directed one of its officers to give to each front property owner; but thereafter, in 1894, the Legislature-re-enacted the section of the city charter in question, and concluded with the words: ‘No further notice being required.’
“A contractor is bound to' look to the charter of the city to see that it has the power to contract and that it proceeds to contract in the manner provided. This Bruning did, and his contracts were entered into after strict compliance with all the details of the charter requirements.
*329 “And there is nothing in the decisions of this court in the cases referred to that questions this. It was merely held that the property owner had a right to expect another notice from the city under the ordinance referred to, and beyond that which was required to make a valid contract between the city and the contractor, before the property owner should be made to pay.
“In the Redersheimer Case, 113 La. 343, 36 South. 990, after quoting this ordinance, your honors said, at page 348 of 113 La., and page 991 of 36 South.:
“ ‘The notice provided for by the ordinance has reference to a notice to be given after the council has ordered the work to be done.’
“And, regarding the charter provision in Act No. 142, p. 179, of 1894, that ‘no further notice being required,’ your honors also said on the sa'me page of the printed decision:
“ ‘It means nothing more than that the city council shall not be under the obligation to give any other notice than that provided for in the act.’
“So that, while this court held that the front proprietor could not be held liable if he did not receive the notice contemplated in the city ordinance, it also held that, after the work has been ordered done, the city was under no obligation to give any other notice than that provided for in the charter to make a valid contract.
“The failure to receive this notice by these particular front proprietors was caused by the neglect of duty held to be due the property owner by the city under the ordinance or promise by the city that it would give still another and special notice, in addition to the notices required by the charter, in order to give validity to the contract. A contractor is not bound to see that the agreement between the city and its citizens is complied with, but merely that the authority given to the city by the state is exercised in the manner pointed out in the grant of authority.
“The contract itself, then, was legal in the strictest sense. The contractor executed all the work thereunder to the satisfaction of the city, who accepted it. The city levied a local assessment to pay the cost and apportioned this cost among the front proprietors, and, through its officers, issued pay certificates and transferred same to the contractor, with subrogation to all the rights and privileges of the city under this local assessment — all in strict accordance with the provisions of the charter of the city.
“This contractor, having exhausted his remedy against these certain front proprietors, from whom he cannot recover judgment because of neglect of duty of officials of the city now comes before this tribunal and asks that the city be held liable for the amount of these particular certificates, with costs.
“The jurisprudence of Louisiana in support of plaintiff’s claim is uniform and conclusive.
“In the case in 3 La. Ann. 123, the facts were that the police jury of West Baton Rouge made a contract with one Michel for making a road and levee, the cost of which was chargeable under the law to the owner of the land fronting the work. Michel proceeded in rem against the front proprietor; but because no personal -notice had been given of the work to be done to the front proprietor, as required by the regulations of the police jury, it was held that the contractor could not recover. See Dreux v. Kennedy, 12 Rob. 503. The contractor thereupon sued the police jury for the amount so due to him, and which it was held he could not recover from the front proprietor, and he was given judgment against the police jury.
“The syllabus reads as follows:
“ ‘Where, in consequence of the failure to give to the owner of a plantation the notice required by the police regulations of the parish of the work to be done in making a road and levee on his plantation, the contractor to whom the' work was adjudicated cannot proceed summarily to seize and sell the land, he may recover from the police jury "the amount due under his contract.’ Michel v. Police Jury, 3 La. Ann. 123.
“Eustis, O. J., in rendering the opinion, cited in support of his conclusion prior cases in 1 La. 109 [Croizet v. Police Jury of Point Coupee], 11 La. 158 [Morgan v. Police Jury of Point Coupee], 4 Rob. 223 [Hanna v. Auter], and 2 La. Ann. 355 [O’Brien v. Police Jury of Concordia].
“In the case of Newcomb v. Police Jury, 4 Rob. 233, the contractor was given judgment against the police jury because he had lost his recourse against the landowner by reason of ‘the inspector having failed to give proper and legal notices,’ etc., and the Supreme Court said in its opinion:
“ ‘It is clearly not the fault of the undertaker that the inspector did not give the notices required by law,’ etc.
“In Michel v. Police Jury of Terrebonne, 9 La. Ann. 67, it was held (syllabus):
“ ‘Plaintiff built a road on the land of a nonresident under contract with defendant. Plaintiff showed that, in consequence of the neglect of the parochial authorities to notify the nonresident, a proceeding against him would have been ineffectual. Held that, as the proceedings against the landowner would be nugatory, he might proceed at once against the policy jury.’
“And the contractor was given judgment accordingly.
“And in Burgess, Bennett, et al. v. City of Jefferson et al., 21 La. Ann. 143, the city of Jefferson entered into a contract for city street paving with Taylor & Lockwood, contractors, in accordance with the provisions of its city charter (quoted at page 145 of the printed decision), which, among other things, provided that ‘said contractors shall be subrogated to the rights of the city against the property in front of which such improvements may be made, releasing the city from all liabilities for the same.’
“Certain front proprietors sued both the city and the contractors, praying for the nullity of the contract and for a decree that the city and *331 the contractors have no rights against their property, and enjoining any collection from them. The court held the contract not enforceable against the front proprietors, but valid as to the city, in the following conclusion (page 147).
“ ‘It will be seen, however, that in one respect the judgment appealed from is erroneous, in so far as it declares the ordinance under which the contract was made null and void. The council had a right under its general powers to order the work to be done, and to authorize the mayor to make the contract for that purpose. There are neither allegations nor proof in the case which would authorize us to pronounce the entire nullity.of this action or of the action of the mayor. So far as appears, the ordinance and the contract are valid as between the city and the contractors. It is only in so far as necessary intendment the front proprietors are held to the city for two-thirds of the cost and the contractors subrogated to the city’s rights, releasing the city from liability pro tanto, and a privilege on property created, that the ordinance and action under it can be declared void.
“ ‘The plaintiffs are amply secured and protected by the remainder of the judgment appealed from. It is therefore ordered and adjudged that said judgment, as to such portion thereof as declares the nullity and illegality of the ordinance in question, be reversed, and that in all other respects the said judgment be affirmed, the defendant to pay the costs of the court below, and the appellees to pay the costs of this court.’
“These decisions of this court conclusively establish the general proposition that, when a municipal or parochial corporation, having the power to do so, makes a contract for a local improvement, the cost of which is chargeable to the adjacent property, but by reason of some improper act or neglect of its officers the contractor cannot recover against the property or its owner, the corporation is liable to the contractor for the amount that he would otherwise have been entitled to recover from the property owner. * * *
“The second paragraph of the note under section 481 of Dillon on Municipal Corporations, in the third edition, reads as follows:
“ ‘Where the contractor has agreed to look for payment to the lot benefited or to the owner, he cannot hold the city, unless it may be in cases where the whole proceeding is void or the city neglects its duty’ (Our italics.)
“Numerous authorities are cited, and in Note 1 to the previous section the right of ‘a contractor to sue the corporation where, in consequence of its neglect, it would be nugatory to proceed against the owners of the property,’ is referred to. And the above referred to Louisiana cases, in 4 Rob. 223, 3 La. Ann. 123, and 9 La. Ann. 67, are cited, among others. The city has inherently the power to make contracts for public improvements, and the provision of the charter to charge the property owner is not a limitation on the power of the city to contract. See Allen v. City, 35 Wis. 403. In Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659, a paving case, it was held that, though the method of payment provided in the contract was illegal and ultra vires, still the contract itself was legal, and the city was liable thereunder to the contractor who had executed the contract. The contention is made on behalf of the city of New Orleans in this case that the city is not liable because of a stipulation in the contracts with plaintiff that ‘the city of New Orleans-shall not be held liable or responsible for any such bills, should any of same not be paid.’ This contract was made under the then city charter. Act. No. 20, p. 30, of 1882, § 37, as amended by Act No. 119, p. 217, of 1880, and Act No. 142, p. 179, of 1894. In none of these acts appears the above-quoted clause inserted in the contract, or any similar provision, though it is manifest from the whole context that it was contemplated that the city was not to be-liable for the part of the cost of the work chargeable to the property owner.
“But in the case of Burgess, Bennett, et al. v. City of Jefferson, 21 La. Ann. 143, above referred to, the section of the city charter itself under which contract was made contained the provision :
“ ‘Said contractors shall be subrogated to the rights of the city against the property in front of which such improvements may be made, releasing the city from any liabilities for the same.’ Act No. 57, pp. 107, 111, of 1867, §§ 7, 12, and quoted in full at page 145 of 21 La. Ann.
“This provision of the charter under which the city of Jefferson’s contract was made was at least as strong and as far-reaching as the provision in the contract now before the court, but which does not appear in the charter of the city of New Orleans.
“Still in the case of the city of Jefferson’s contract this court held that, while the contractor could not recover against the front proprietors, and as to them the contract was ‘declared void,’ nevertheless the ordinance and the contract are valid as between the city and the contractor.
“Moreover, in that case it was held that recovery could not be had against any front proprietor, while in the case now before your honors it was merely held that the contractor could not recover as to these particular parties, who proved that they had not received the notice to' which this court held they were entitled. Even if this clause in the contract is binding on this-plaintiff, what is its reasonable and legal construction ?
“Its purpose and intent was evidently to exclude any guarantee or warranty on the part of the city for the amount of the bills that it should issue to the contractor. It does not, and cannot, exclude the warranty that the law implies as to the validity or existence of the local assessment to which the city subrogated the contractor with the right to seize and sell the property in case of nonpayment. In any sale or transfer of a credit there is necessarily implied a warranty as to the validity and existence of the thing transferred and of the title *333 and right of the transferror to make the transfer.
“This principle is stated in article 2646 of the Revised Civil Code: ‘He who sells'a credit or incorporeal right warrants its existence at the time of the transfer,’ etc.
“In the Burke bond case of Meyer v. Richard, 163 U. S. 385, 16 Sup. Ct. 1148, 41 L. Ed. 199, there is an elaborate discussion of the whole subject by Mr. Justice White as the organ of the court.
“It is a well-settled principle that, in a sale or transfer of a right or credit, even with an express stipulation that it is made ‘without recourse,’ there is still necessarily a warranty by the transferror of the validity and existence of the thing transferred and of the title of the transferror.
“In Corcoran v. Riddell, 7 La. Ann. 268, it was held (syllabus):
“‘The vendor of a judgment, _ who stipulates against any recourse or claim whatsoeyer against him, is not relieved from the implied warranty of the existence of the debt at the time of the transfer in the form in which it purported to exist; that is to say, in the form of a judgment.’
“In Templeman v. Hamilton, 37 La. Ann. 754, the court said (syllabus, page 755):
“ ‘The assignor of an incorporeal right, even under stipulation of nonwarranty, warrants the existence, not only of the right but of the mortgage or other accessory securities attached to and transferred with it.’
“And in the case of Meyer v. Richard, 163 U. S. 385. 16 Sup. Ct. 1148, 41 L. Ed. 199, several cases are referred to, to the same effect, in the opinion. * * *
“When, therefore,. the city of New Orleans contracted with plaintiff for certain work of local improvements to be done, the city having the power and proceeding according to the charter requirements, and the contractor did the work contracted for, which on completion was accepted by the city, and in payment the city transferred to the contractor certain certificates representing the amount of local assessments levied by the city against the front proprietors, secured by first privilege superior to vendor’s lien, etc., and ‘subrogates said contractor to all its rights to seize and sell the property in case of nonpayment of any or all of said bills,’ etc., we submit that, notwithstanding a stipulation by the city, equivalent to what is generally understood by the words ‘without recourse,’ the city necessarily warrants that the thing transferred is a local assessment, enforceable in rem against the property of the front proprietor. There is excluded any warranty that the contractor will collect the amount of the paving bill, but there must be the warranty that it is a paving bill, and not ‘a blank piece of paper.’
“By reason of the neglect of the city’s officials these particular paving bills have been held by this court to be no paving bills at all; that they evidence no enforceable claim against the front proprietors; in short, they are not what was contracted to be ■- transferred and delivered by the city to plaintiff in the contracts in question. They are not paving bills. They are nothing.”
The city attorney calls the court’s attention to the syllabus in the matter of Moylan v. City of New Orleans, 32 La. Ann. 673, as declaring that:
“A party contracting with the city of New Orleans for grading and curbing banquettes does so at his own risk, and if, owing to some informalities in the contract, he fails to recover from the front proprietors the amount of the city surveyor’s bills against them, which he has accepted in payment of his work, he has no recourse against the city.”
And to that portion of the body of the decision in which it is declared that:
“The record shows that he [the contractor! instituted on those bills quite a number of suits against those [property holders] who refused payment, and whom he treated as delinquents; but that judgments were rendered in their favor because, says plaintiff’s brief, the city had failed to give the proper advertisements for bids.
“Moylan contends that he is not responsible for this omission on the part of the municipal authorities. This is an error. He dealt with the city at his risk and peril. The omission, if any, was anterior to the date of the contract. By his accepting a transfer and subrogation from the city, there was a novation of creditors, and the defenses which could have validly existed against the transferror could well be urged against the transferee.”
The court tersely said:
“It is impossible to conceive how under such terms and conditions the plaintiff ever imagined that the city could be held responsible to him.”
Plaintiff, referring to the Moylan Case, says:
“In that case Moylan admitted that the city had failed to give proper advertisements, and the court said: ‘From that admission we have authority to assume that the contract upon which he rests his claim was illegally formed by the city, and is a nullity, on account of the nonobservance of legal requirements prescribed by law as conditions precedent for the validity of every contract; the provision of the law on the subject being prohibitory, and not merely directory.’
“We concede the correctness of that doctrine. A contractor must at his peril see that all legal requirements, prescribed by law as conditions precedent for the validity of any contract have been strictly complied with. Moylan failed to see> that those requirements necessary for the validity of the contract were complied with. *335 Consequently the contract was a nullity and he had no recourse against the city; but in this case all the requirements of the city charter were complied with, and consequently the contracts of Bruning were valid contracts, under which he had his recourse against the city under the conditions existing.
“In the Redersheimer Case this court said: ‘There are two statutes providing for the construction of sidewalks in the city of New Orleans. They are Acts Nos. 114 and 119, pp. 211, 217, of 1836. Act No. 114 requires that, before the city shall have authority to have the work done at the expense. of the property holder, the latter shall be afforded an opportunity to do the work himself; in other words, that a notice shall be served upon him to do the work and that the city may proceed to have the work done (at his expense) only upon his failure or refusal within the time allowed by the notice. The work represented by the certificates in this case was done under the provisions of Act No. 119; that is to say, after notice by publication only, without previous notice to the property holder. Both acts are amendatory of the city charter.’
“The object of Act No. 114 is declared to be ‘to authorize the council to establish a uniform grade of banquettes in the city of New Orleans and to amend the city charter.’ The object of Act No. 119 is declared to be ‘to provide for paving and banquetting streets,’ and to amend the city charter. Act No. 114 authorizes no work to be done at the expense of the property holder, except that of ‘repairing or regrading.' Act No. 119 authorizes the paving and banquetting of streets.’
“The work in this case was not a repairing ox regrading, but the construction of a sidewalk where none existed before.
“Act No. 114 has reference ‘to the repairing or regrading of existing sidewalks’; Act No. 119 to the construction of sidewalks where none existed before. Act No. 119, p. 217, of 1886, as amended by Act No. 142, p. 179, of 1894, provides for a notice by publication, and adds ‘no further notice being required.’
“Ordinance No. 8,422 of the city council sought to afford to the property holder under Act No. 119 an opportunity to do the work similar to that extended to him by Act No. 114.”
This court did not pass upon and was not called upon to pass upon the contracts of Bruning as between himself and the city of New Orleans. The city was not a party to that suit. The only issue presented was as to the effect and bearing those contracts had upon the owners of property fronting on David and Bienville streets. These property owners were legally concerned as to what might be 'the right 'and power of the city only in so far as they were individually affected. In the present proceeding the issue submitted is, What were the rights and powers of the city of New Orleans under section 37 of the charter of the city? Act No. 20, p. 30, of 1882, as amended by Act No. 119, p. 217, of 1886, and Act No. 142, p. 179, of 1894.
Had the city of New Orleans the power and authority under section 37 of the charter, Act No. 119, p. 217, of 1886, and Act No. 142, p. 179, of 1894, to enter into a contract for the paving and banquetting of streets (not previously paved) at the cost of the whole city? If the city did in fact enter into such a contract with a contractor (no mention whatever being made of property owners fronting on the streets paved), would such a contract have been a valid one under the powers conferred upon the city by section 37 of its charter (Act No. 20, p. 30, of 1882. £ 37, Act No. 119, p. 217, of 1886, and Act No. 142, p. 179, of 1894.
The provisions of the act of 1894 have been copied herein, and it will be seen that it provides that:
“The city of New Orleans may in its discretion provide for the paving of any street or portion thereof at the expense of the whole city.”
The grant of power to that effect is complete. It is true that after conferring upon the city this power and authority the act declares (in permissive terms) that:
“The city may thereupon force, impose and collect of the front proprietors of lots fronting on said street or streets a special assessment in proportion to frontage of three-quarters of the cost of said improvement and that the other fourth in addition to intersections shall be paid by the city.”
The right and authority of the city “to provide at its discretion for the paving of any street or portion thereof at the expense of the whole city” is one thing. The right, power, and authority of the city to exact contribution from the front property holders to a certain extent is another thing. The *337 right and authority of the city to make this call for contribution was not an absolute right. There were duties and obligations imposed upon the city in order to make this right of recouping itself (if that expression can be used) for a portion of the cost become absolute. The property holders were under no liability, unless the duties thrown upon the city were complied with. If the city failed to comply, the property owners incurred no liability, and the expense of the work was thrown upon the whole city. The responsibility of the whole city for the work remained if the city failed to bring itself into the situation which entitled it to call for contribution. If it did not place itself in the required situation, it simply lost the opportunity granted to it by the law to recoup itself through a call for contributions.
In this case it failed to place itself in a position where a call for contribution could be made, and when Bruning sought to avail himself of the claimed right of the city to demand contributions from particular property owners the latter claimed and succeeded in obtaining a decree in their favor for the reason that they had not received a certain notice which the ordinances of the city itself made it imperative on its part to give them before contribution could be demanded of them.-
Bruning did not claim or pretend to have any direct original rights against these property owners. His rights as against them were derivative under and through the rights -of the city and subrogation to its rights. The city, having itself no rights against the property owners, transferred none to Bruning, and his demands were rejected.
The city of New Orleans resists the attempt of the plaintiff to recover from it (with interest and costs) the amounts which he failed to recover from the particular front proprietors who made good their defense that their properties were not liable under the circumstances of the case to contribute part of the expense of the work, on the ground that he expressly consented and agreed that “the city should not be held responsible for any bills should any of them be not paid,” and that the city should not be responsible for any part of the cost of the work. Plaintiff denies that the clause in question covers or was intended to cover a case where certificates or bills are not paid for the reason that they had no legal existence. Oiv. Code, art. 2045.
He contends that the city, by transferring to him the paving certificates with subrogation, warranted the existence of its claims against the particular front proprietors, and warranted, not only that it was possessed of the specific • power to charge the front proprietors with a proportion of the expenses of the work, but also that it had exercised the power in manner and form such as to make the power available. He denies that he consented to warrant the city against its own acts or negligence, and urges that if he had agreed to do so the agreement to that effect would be void. Oiv. Code, art. 2504. He urges that the city should be driven back upon its original personal obligations as one of the contracting parties, and cannot legally or equitably throw the loss arising out of the situation upon him.
We think that under the law and the evidence plaintiff is entitled to the judgment against the defendant, which he prays for.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court herein appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the plaintiff, Hen ry Bruning, do have judgment against and recover from the defendant, city of New Orleans, the sum of $2,580, with 6 per cent, interest per annum thereon from September 13, 1896, until paid, and the further sum of $425.90, with legal interest from judicial demand, and all costs.