STATE ex rel. WHELESS INV. CO., Limited, v. CITY OF SHREVEPORT et al.

No. 4324.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

A. M. Pyburn and L. Percy Garrott, all of Shreveport, for appellants.

Chandler & Chandler, of Shreveport, for appellee.

TALIAFERRO, J.

This suit involves the validity of a paving lien.

The city of Cedar Grove, in Caddo parish, under the authority conferred by Act No. 168 of 1926, in the month of June, 1927, awarded a contract to Flenniken Construction Company to pave a portion of Sixty-Ninth street therein. Thereafter this city was incorporated into and became a part of the city of Shreveport, and subsequent proceedings with regard to the paving were conducted by that city, which assumed the obligations of the former. At the date of said contract, and when said paving was laid, lots 72, 73, and 74 of the Municipal Park subdivision, abutting Sixty-Ninth street, were owned by C. E. White, and relator herein carried a mortgage against the first two of the lots.

On October 11, 1927, the city of Shreveport passed an ordinance accepting said paving as having been laid in compliance with said contract, and therein fixed the liability of each abutting property owner and levied assessments therefor, and in other respects did what was deemed necessary to create the lien to secure payment of said assessments. This ordinance, however, was not recorded in the mortgage records of the parish until October 26th.

The total cost of the paving in front of the three lots amounted to $696.25. A special paving assessment certificate, numbered 180, pursuant to said ordinance, was issued by the city declaring the amount due by C. E. White and the terms of payment thereof, but lot 69 was described therein instead of the three named above. The ordinance accepting the paving, we conclude from the pleadings, correctly described the White lots. No copy of the ordinance is in the record. The owner of the lots elected to pay one-tenth of the paving cost in cash and gave his nine equal notes for the balance, maturing annually over a period of nine years with 6 per cent. interest. These notes were identified with the ordinance accepting the paving and providing for the lien, and, after being indorsed by the city of Shreveport "without recourse," the entire series, we assume, was sold to Dr.

A. Lemoine. When this suit was filed, he owned the seven notes which had not matured. We also assume the first two notes had been paid, but the record does not disclose who paid them, if paid.

Relator foreclosed its mortgage against lots 72 and 73, and on July 25, 1931, purchased them at sheriff's sale. This mandamus suit was instituted against the city of Shreveport and W. M. Levy, recorder of mortgages of Caddo parish, on September 26, 1931, to compel cancellation and erasure of the purported paving lien in so far as it affected said lots. He alleges that no legal or valid lien against said property resulted from the city's efforts to bring one into existence because the ordinance was not recorded in the mortgage records within ten days, as provided by section 7 of the Act No. 168 of 1926.

The city of Shreveport admits the ordinance was not recorded within the time prescribed by the act of 1926, but insists that the lien is nevertheless legal and valid as against relator and its property.

This respondent says that relator is estopped to deny the validity of the lien it seeks to have canceled, because it well knew that the street in front of said property had been paved, and that the paving had not been paid for, which fact was disclosed by the mortgage records of the parish; that relator bid $1,800 for said two lots at sheriff's sale and retained in its hands $1,755 with which to pay said paving lien and other liens against the lots; that said property has been greatly enhanced in value by reason of the laying of the pavement in front of same, for which relator has paid nothing. The clerk of court submitted the whole matter to the court.

There was trial of the case on the issues raised by these pleadings, but before the court rendered judgment relator filed a motion to reopen the case for the purpose of making Dr. A. Lemoine a party thereto, it being alleged that he "claims to have an interest in the subject matter of this suit." The motion prevailed, and Dr. Lemoine was served and he filed answer. He joins the city in its effort to have the validity of the lien in question upheld, and asserts that it was legal, valid, and effective against C. E. White, owner of the property when the paving was laid and accepted, and that relator only acquired the interest of said White in same; that White is estopped to deny the legality of said lien, and also relator, for the reasons the city sets up. He avers that the paving enhanced the value of relator's property to an extent in excess of the amount due on the paving lien notes, and relator should not be allowed to reap this benefit without paving for it. He alleges that he acquired these paving notes in good faith, before maturity, and without any knowledge of the defects in the lien securing their payment, if any; that, inasmuch as the city was charged with the du-

ty of seeing, the law authorizing the issuance of said notes was strictly complied with, in order to create and preserve the lien securing their payment, and, having offered the notes for sale, thereby warranted that it had complied with all legal requirements, and that said notes and paving certificate were valid and binding; that, if the said notes and paving certificate are invalid on account of the city's failure to perform its duty, it is responsible to him for the balance due on the notes, which amounts to $487.38. He called the city in warranty.

The city of Shreveport denies liability to Dr. Lemoine in any manner and to any extent. In the alternative, it alleges that, should there be judgment in favor of Dr. Lemoine and against it for any amount under the call in warranty, in such event respondent is entitled to recover the reasonable enhancement in value of the lots resulting from the paving of the street abutting them; that such enhancement in value is equal to the balance due on the notes, principal, interest, and attorney's fees.

Another trial was had. There was judgment in favor of relator ordering the cancellation of the lien in question in so far as it affects lots 72 and 73 of the Municipal Park subdivision of Cedar Grove, owned by it. Dr. Lemoine was given judgment for $324.82 (⅔ of $487.38) against the city of Shreveport, and his rights with reference to lot 74 were reserved to him. The city was cast for all costs.

A motion for a new trial, or, in the alternative, a rehearing, was timely filed by the city, on the ground of discovery of evidence important to the issues of the case, to wit, the contract between the city of Cedar Grove and the Flenniken Construction Company, a copy of which is attached to the motion. It is urged that this contract limits the liability of the city to the contractor to the cost of paving chargeable against said town of Cedar Grove. The motion was overruled. The city of Shreveport and Dr. Lemoine have appealed. Dr. Lemoine answered the appeal. He prays that the judgment in his favor and against the city be increased to $487.38 in event the paving lien is held invalid.

■ The motion for new trial, or rehearing, was properly overruled. The contract between the city of Cedar Grove and Flenniken Construction Company does fix the liability of that city (afterwards assumed by the city of Shreveport) for cost of paving of street intersections, culverts, and lighting system, and none other, but that limitation of responsibility has no bearing upon the question of liability of the city of Shreveport to Dr. Lemoine. In effect he is seeking to hold the city responsible to him because of its failure to do certain acts required by law that were necessary to the validity of the obligations it sold to him and stood sponsor for. This re-

sponsibility, if there be such, has no direct connection with the paving contract, but arose many months thereafter.

We shall first consider the various pleas of estoppel discussed in briefs.

The sheriff's deed to relator is not in the record. Knowledge of its contents comes to us only through the pleadings and briefs. Relator says the price of sale, less costs, was held in his hands to pay off valid liens against the property described therein. The city avers that the amount was retained to pay off liens against the property, including the paving lien in controversy. In view of this situation, we cannot consider this phase of the estoppel raised against relator.

■■ There is an admission in the evidence that, when the paving of Sixty-Ninth street (that part covered by the contract with Flenniken Construction Company of June 15, 1927) was petitioned for, relator owned 54 per cent. of the property abutting that street, and it is argued that, as the 1926 act requires 60 per cent. of such owners to petition therefor before the city could have the paving done, it is evident relator signed the petition requesting that the city take the necessary steps to have the paving laid and paid for. Estoppel is urged against relator on this account. Respondent's deductions are most likely correct. However, this issue was not raised by the pleadings. It is discussed in the briefs only. Estoppel is a special plea and must be specially pleaded. However, we think the plea without merit. For one to sign a petition asking a municipality to do certain things authorized by law certainly does not preclude the petitioner from thereafter contesting the legality of what is done pursuant to the petition. If that were true, property owners would be reluctant to petition for public improvements to be made. When property owners file a petition with the municipal authorities asking that certain improvement be made, it has no further significance than their consent for the work to be done in the manner prescribed by law.

■■ In the "Stipulation of Facts" filed as evidence in the case, there is an admission that relator paid liens (real or purported), on or about November 2, 1927, against some ten pieces of its property described in the same ordinance as is the lien against lots 72 and 73, the total amount of which was $3,655.30. This payment on the part of relator is urged as estoppel against him. This issue, like the one above, was not raised in the pleadings, but discussed in briefs. It was not specially pleaded. We do not think there is any merit in the plea. It is not shown that relator, when the payment was made, knew of the alleged defect in the paving lien. If payment was made without such knowledge, it is certain he is not estopped to raise the question now. It is not certain he would be estopped if he had knowledge of the lien's invalidity, when the payment was made. To hold that relator, for having made such payment, is estopped to question the legality of the lien against the property subsequently acquired by him, is to hold that he has ratified and approved the city's omission of duty, as regards essential requirements for the lien's existence. A ratification, to be binding, must be made with a knowledge of all the material facts concerning the act, transaction, or matter, the subject of the ratification. Credit Alliance Corp. v. Centenary College of La., 17 La. App. 368, 136 So. 130.

It is urged that, inasmuch as C. E. White, who owned the lots when the paving was laid and accepted by the city, signed the paving lien notes, he would be estopped to deny the legality of said paving lien, and that, therefore, relator is estopped, he being in no better position to raise the question than White would be.

■ It is probably true that, under the authority of City Savings Bank & Trust Co. v. Wilkinson, 165 La. 386, 115 So. 629, estoppel could be successfully pleaded against White, but it does not necessarily follow that relator is estopped because White would be. He acquired these lots nearly four years after the city's failure to timely record the lien. He promptly invoked the court's intervention to remove the supposed lien after acquiring the property. He performed no act since acquiring the property that would preclude him from attacking the lien, and should not be bound by the acts of the former owner thereof, of which it is not shown that he had knowledge before he acquired the property. If doctrine of estoppel should be applied to relator, under the circumstances of his position, a mortgagee would be greatly at the mercy of an unscrupulous mortgagor, who could recognize and ratify invalid liens and privileges against the mortgaged property to the impairment of the mortgagee's security.

Section 7 of Act No. 168 of 1926 reads as follows: "Upon final and satisfactory completion of the work, the governing authority shall accept the same by ordinance or resolution and provide for the assessment of all abutting real estate, railroad tracks and road beds in the amount due by the owners thereof, according to rules of apportionments adopted and as herein stipulated. A copy of such ordinance containing the said assessment, certified by the Clerk, shall within ten days after its passage be filed for record in the office of the Recorder of Mortgages of the Parish, and the same, when so filed and recorded, shall operate as a lien and privilege in favor of the said municipality or its transferees against the property therein assessed, which lien and privilege shall outrank and prime all other liens, privileges, encumbrances and claims except taxes."

The requirements of this law are manda-

tory. After the work has been done by the contractor, the governing authority "shall accept the same by ordinance or resolution and provide for the assessment of all abutting real estate," etc., and " * * * shall within ten days after its passage" record a copy of said ordinance in the office of recorder of mortgages of the parish, "and the same, when so filed and recorded, shall operate as a lien and privilege," etc. It is absolutely necessary for the bringing into existence of a lien or privilege that the law prescribing the steps precedent thereto be literally complied with. Liens being stricti juris and in derogation of common right, laws providing for their creation are strictly construed.

■ Two indispensable things were necessary to the validity of the lien involved herein, viz.: (1) That the ordinance of the city should be passed accepting the pavement and making assessments, and (2) that it, or a copy, should be recorded in the office of the recorder of mortgages of the parish of Caddo within ten days from its passage. The failure to do the latter strikes the lien with nullity.

In the case of Walker v. Spence et al., 16 La. App. 317, 134 So. 271, this court held that, where the ordinance accepting the paving and creating the lien was not recorded for more than two years after its passage it was of no avail against subsequent purchasers of the property sought to be affected thereby. The facts of that case are that a certain piece of property was inadvertently omitted from the ordinance accepting the paving and providing for assessment against abutting owners. A supplemental ordinance was adopted by the city curing the omission, but it was not recorded for over two years after adoption.

It has been often held that, where an act had to be done within a certain time to create and/or preserve a lien or privilege, time was of the essence, and that its limitations must be observed.

Section 19 of Article 19 of the Constitution of 1921 provides that: "No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law," etc.

In Citizens' Bank of La. v. St. Louis Hotel Ass'n et al., 27 La. Ann. 460, it was held: "In this instance the contract for repairs and improvements was entered into on the seventeenth of June and was not recorded until the nineteenth of said month. By the law, the privilege of the contractor in such a case does not have a preference over creditors whose mortgages than had force. * * *

"Plaintiff invokes article 3274 R. C. C., and contends that the preference so allowed was lost by the failure to record the contract, out of which the claim springs, on the day it was entered into, as provided in said article. This position is correct."

In that case the contest was between one who held a valid mortgage against the property repaired when date of contract for repairing was entered into, and the contractor who did the repairing. Under article 3274 at that date (before being amended by Act No. 45 of 1877), such contracts should be recorded the date of execution. The one in question was recorded the second day after execution. The court, as reflected from the above-quoted syllabus, held that the pre-existing mortgage was not affected by the contractor's lien.

In Allen-Wadley Lumber Co. v. Huddleston, 123 La. 522, 49 So. 160, the court said: "Privileges on immovables have no effect against third persons, unless recorded in the manner required by law, and confer no preference over prior mortgages, unless recorded within the delay prescribed by article 3274 of the Civil Code."

This suit involves a contest between materialmen and contractor for erection of a building, on one side, and holder of vendor lien and mortgage paper on the other.

In Marco Givanovitch et al. v. Hebrew Congregation, 36 La. Ann. 272, it is said: "Unless the act from which the vendor's or other privilege is claimed, as affecting real estate, be seasonably recorded in the proper mortgage book of the parish in which the property is situated, general mortgages previously registered (and even certain liens) will take precedence and be satisfied according to their respective rank."

In this case the holder of vendor's lien notes lost the privilege because the lien was not seasonably recorded. Judgment creditors were paid in preference to him.

In Gleissner v. Hughes, 153 La. 133, 95 So. 529, the Supreme Court had before it, and passed upon, many questions involving liens and mortgages and their effect against real estate with respect to time of registry. It was therein held that liens filed after the period of 45 days, provided by Act No. 229 of 1916, had expired, were without effect, citing article 186 of the Constitution of 1913 (now section 19, art. 19, Const. 1921).

In American Brewing Co. v. Artigues, 147 La. 155, 84 So. 571, it was held: "Fact that brewing company had actual knowledge that contract for repair of premises on which it held a mortgage had been made, and that work was going on, did not take the place of registry of contract as required by Civ. Code, art. 3274, to give contractors same right which a recorded lien would confer."

■■ The holding in this case answers respondents' contention that, inasmuch as relator knew the paving was being laid in front of the property he held mortgage against, and knew it was not paid for, he could not escape payment of its cost. No authority has

been cited by respondents in support of their contention that relator can be held responsible for payment of the enhancement in value of his property due to the presence of the pavement on Sixty-Ninth street. We have found none. If there were any, undoubtedly industrious counsel for respondents would have discovered them. We do not think this position tenable. If it were, a municipality could do indirectly what the law forbids being done directly. The cost of paving could be fastened upon an abutting property owner regardless of failure to follow the course prescribed by law for such improvement. A lien might be absolutely null and void from its incipiency, and yet the abutting property owners could be forced to pay the cost of the improvement to the extent of the amount found to be the enhanced value of the property due to the presence of the improvement, a question of fact difficult of determining accurately.

The city of Shreveport indorsed the White notes "without recourse." An employee of the city, acting for the Flenniken Construction Company, owner, sold them to Dr. Lemoine. The city tacitly guaranteed and warranted that it had done all things, acts, and deeds required by law to bring into existence the lien and privilege which the law authorized to secure the payment of said notes, and in like manner tacitly vouched for the validity of the security which should have accompanied delivery of said notes into each third person's hands. Its liability under such a warranty is not affected by its qualified indorsement on the notes.

Section 65 of the Negotiable Instrument Law (Act No. 64 of 1904) provides that:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants,—

"1. That the instrument is genuine and in all respects what it purports to be;  *  *  *

"4. That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless.

"But when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee."

In this case the city warranted that these notes were secured by first lien against certain property, and that it had no knowledge of any impairment of that security. Having been directly responsible for the act that destroyed the validity of the lien, knowledge of such impairment must be imputed to it.

A municipality's liability under circumstances such as are disclosed in this case has been well established by our jurisprudence. Bruning v. City of New Orleans, 122 La. 316, 47 So. 624, and cases therein cited; Semel v. Gould, 12 La. Ann. 225; Denis Cronan v. Municipality No. 1, 5 La. Ann. 537.

The court below gave Mr. Lemoine judgment for two-thirds of the amount due on the notes held by him, but reserved his rights as regards the lot numbered 74 not involved in relator's suit. Dr. Lemoine complains of this judgment and urges us to increase it to the full amount due him on the White notes. Under the circumstances we think the lower court's action correct. The record does not disclose the present ownership of this third lot, nor attitude of the owner towards the paving lien against it. It may be that the owner will pay off this lot's proportion of the notes, without question. If this is not done, respondent's right to proceed against the city for the other third of the notes is open to him. He also complains that the court below only allowed interest on the judgment at 5 per cent. from judicial demand and rejected his claim for 10 per cent. attorney's fees. We think the lower court erred in these respects. The measure of the city's liability is coextensive with the amount Dr. Lemoine could have enforced against the lots if the lien had been valid. Bruning v. City of New Orleans, 122 La. 316, 47 So. 624; Cronan v. Municipality No. 1, 5 La. Ann. 537. The paving certificate and the notes stipulate interest at 6 per cent. from date and 10 per cent. attorney's fees if notes are placed in hands of an attorney for collection after maturity. Interest at this rate and the attorney's fees are both authorized by Act No. 168 of 1926. Interest on the notes has been paid to October 11, 1930.

For the reasons herein assigned, the judgment of the lower court is amended by allowing respondent Dr. A. Lemoine interest at rate of 6 per cent. from October 11, 1930, until paid, on the judgment for $324.92 against the city of Shreveport, and by allowing him attorney's fees of 10 per cent. on said judgment, principal, and interest, and, as thus amended, the judgment appealed from is affirmed.