DAVID W. WING and JOHN COSGROVE, Respondents, v. UNION CENTRAL LIFE INSURANCE COMPANY, Appellant.

**Kansas City Court of Appeals, June 13, 1914.**

1. **DEEDS OF TRUST: Satisfaction: Penalty for Failure to Release.** Defendant held a deed of trust on B's farm the annual interest on which was secured by coupon notes negotiable in form. B defaulted in the payment of certain interest represented by coupons for those years. To save his farm from foreclosure B applied to a banker for money to pay said coupons. The banker agreed to advance the money provided the coupons would be assigned to him and carry with it the security afforded by the deed of trust, and took a chattel mortgage as additional security. The banker sent the money direct to the defendant and received the coupons duly assigned to him without recourse. Defendant also notified B of this fact and the latter made no objection. Some six months later B's farm was sold under foreclosure of a second deed of trust, and plaintiffs became the purchasers. They paid off the first deed of trust and demanded a release. Defendant executed a release except as to the coupons which had been assigned. Plaintiffs thereupon sued for the penalty. There was nothing to show that defendant had any notice that the coupons were not rightfully assigned to the banker. *Held*, that defendant was not liable to the penalty provided by the statute for failure to release.

2. ———: ———: **Penal Statute.** A penal statute must be strictly construed and can be applied only to such cases as come clearly within its provisions and manifest intent.

3. ———: **Coupons: Negotiable Instruments.** Coupons in the form of negotiable promissory notes are themselves negotiable and when detached from the bond or note to which they pertain, they possess all the attributes of commercial paper. And when negotiated, carry with them the security given by the deed of trust securing the original bond, *pro tanto*.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED.

*W. G. & G. T. Pendleton* and *W. F. Johnson* for appellant.

*John Cosgrove* and *Daniel W. Cosgrove* for respondents.

TRIMBLE, J.—This suit, founded upon section 2850, Revised Statutes 1909, is brought to enforce a forfeiture of $700, being ten per cent of the amount of a deed of trust, and to collect $250 general damages, for failure to release said deed of trust.

The case was tried by the court sitting as a jury, and judgment was rendered for the penalty only, with interest thereon from date of the alleged refusal to satisfy.

Defendant held a deed of trust on the farm of P. H. Burton to secure the latter's negotiable promissory note for $7000 due ten years after date bearing six per cent interest per annum. The interest was evidenced by ten interest coupon notes of $420 each, respectively due on the first day of December in each succeeding year thereafter. These coupon notes were negotiable, and if not paid when due, bore eight per cent interest from maturity.

After giving this deed of trust, Burton executed a second deed of trust upon the farm to other parties. These other parties are not interested in this suit in any way. The second deed of trust is mentioned here only to show how plaintiffs, by becoming purchasers of the Burton farm at foreclosure of this second deed of trust, obtained title to the Burton farm and are here demanding the penalty.

Burton paid the first coupon note on the first deed of trust when the coupon fell due. He paid the second shortly after it fell due except a small amount of interest which had accumulated thereon. The third coupon note fell due December 1, 1908, and he could not pay it. Defendant was pressing him for it, and the deed of trust was likely to be foreclosed. Burton, in order to save his farm from foreclosure, applied to the holders of the second deed of trust, but they refused

to help him. He then applied to W. J. Boggs of New Franklin, Missouri, to advance the money to pay these coupons and save the farm from sale. Nothing was done however, and shortly thereafter defendant's state agent, Knapp, went to Boggs, in company with Hairston, the local agent who had procured the Burton loan, to induce Boggs to advance the money for the Burton interest.

Boggs agreed that he would furnish the money to take up the two coupons (consisting of the full amuont of No. 3 and the small balance due on No. 2) provided that they could be assigned to him and carry with them the security of the deed of trust supporting them. Boggs did not want to advance money to pay interest on the first deed of trust and be postponed in his security until after the second deed of trust. Boggs was not sure at this time that an assignment of the coupon notes to him would carry the security of the first deed of trust.

About January 20, 1909, P. H. Burton and his son, R. R. Burton, saw Boggs in an endeavor to obtain money to meet the coupons above mentioned and also the interest coupon note of $900 due on a deed of trust owed to defendant by Ben Burton, another son of P. H. Burton.

An agreement was entered into between P. H. Burton and Ben Burton on one side and Boggs on the other whereby the two Burtons gave a chattel mortgage on some personal property and Boggs furnished something over $1300 to take up all three coupons. Boggs sent this money to defendant, and the coupons were assigned without recourse by defendant to Boggs. There is no dispute over the fact that Boggs did furnish this money; that it was sent direct from him to the defendant; that the coupons were assigned without recourse to Boggs; and that Boggs has continued to hold them ever since. The only matter in dispute as to Burton's arrangement with Boggs is whether or

not Boggs was to have an assignment of the two P. H. Burton coupon notes as security along with his chattel mortgage. Plaintiffs claim that he was not, and that when he sent the money to defendant the coupon notes were paid and extinguished, and were no longer capable of assignment to Boggs.

Six months after the assignment of the coupon notes to Boggs, the holders of the second deed of trust foreclosed, and plaintiffs bought the P. H. Burton land at said sale. They notified defendant of this fact, and, after sending the money to pay off the $7000 note held by it, demanded that the deed of trust be released. Defendant executed a deed of release except as to said two coupons and notified plaintiffs that they had been assigned to Boggs. Plaintiffs thereupon made a formal demand of defendant to execute a full deed of release which defendant refused to give, and after the expiration of the thirty days required by section 2850, brought this suit for the penalty.

It is plaintiff's contention that the transaction between P. H. Burton and Boggs was a loan made by Boggs to Burton and that the money sent to the defendant by Boggs was a payment, discharge and extinguishment of said coupons, and hence defendant had no right to refuse to execute a full deed of release and is, therefore, liable for the penalty inflicted by the statute.

Defendant's contention is that the agreement between Burton and Boggs was that Boggs should have said coupon notes assigned to him and hold them as security along with the chattel mortgage; and that defendant assigned said coupons in good faith to Boggs and he still holds the same, and therefore, Boggs is the man to release as to them whenever he is repaid. And as the defendant has released as to everything except said two coupon notes, it ought not to be held liable for the penalty.

Defendant's further contention is that even as-suming that the arrangement between Boggs and Bur-ton did not in fact provide for the assignment of the coupon notes to Boggs, yet, as the money was sent by Boggs to defendant with no notice to defendant that Boggs was Burton's agent, but with everything to make defendant believe Boggs was rightfully entitled to an assignment thereof, and as it did in good faith assign said coupon notes to Boggs and notified Burton of that fact and Burton made no objection thereto, de-fendant ought not to be penalized under the statute since the case does not come within either the letter or the spirit of the statute.

The judgment is for the penalty only and plain-tiffs must, therefore, bring their case clearly within the spirit and manifest intent of the statute. Section 2850 is highly penal and must be strictly construed. [Wing v. Central Life Insurance Co., 155 Mo. App. 356; Snow v. Bass, 174 Mo. 149.] When the basis of an action is a statute which is highly penal, the statute must not only be strictly construed but must be applied only to such cases as come clearly within its provisions and manifest intent. [Eddington v. Telegraph Co., 115 Mo. App. 93, l. c. 98; Bradshaw v. Telegraph Co., 150 Mo. App. 711; Rixke v. Telegraph Co., 96 Mo. App. 406.]

The coupon notes were negotiable, and, when de-tached from the bond or note to which they pertained, they possessed all the attributes of commercial paper. [8 Am. & Eng. Ency. of Law (2nd Ed.), 6. Edwards v. Bates County, 163 U. S. 269, l. c. 271.] And when negotiated they carried with them the security given by the deed of trust *pro tanto*. [8 Am. & Eng. Ency. of Law (2nd Ed.), 13.]

The assignee of a note secured by a deed of trust is the party entitled to receive payment and who is thereupon bound to satisfy the record as to that note.

[Sec. 2844, R. S. Mo. 1909; Ewing v. Shelton, 34 Mo. 518.] This applied as well to the assignee of a part of the notes secured as it does to the assignee of all. [Hill v. Wainwright, 83 Mo. App. 460.] Hence, after the coupons in this case were assigned to Boggs, he was the proper person to release as to them.

The trial court found that the coupons were in fact assigned and delivered to Boggs. And while the trial court omitted to find specifically that there was no agreement between Burton and Boggs that the latter was to have them assigned to him, yet, the inference is that the court proceeded on this theory since the court states, in a written memorandum filed, that Burton borrowed the money and directed it to be sent to the defendant for the purpose of paying off, taking up and returning to him, Burton, said coupons 2 and 3.

It is not seen how the trial court could have reached the conclusion that there was no agreement that Boggs should take an assignment of the coupon notes. Boggs testified to it, Burton's son who was present, testified to it. The letters written to the company by Boggs show that he was acting in his own behalf and was proposing to take the coupons on condition they were assigned to him. The assignment was strictly in keeping with the preliminary negotiations between Boggs and defendant's agents Knapp and Hairston. The only evidence tending to show that P. H. Burton did not agree to them being assigned to Boggs is contained in the testimony of Burton taken at a former trial of the case before another judge. It was agreed that this testimony should be admitted in this trial. In that testimony P. H. Burton denied that there was any agreement that Boggs should have an assignment of the coupons. But when he went on the stand at this last trial, he was asked if he had any agreement other than that disclosed by the chattel mortgage. He answered: *"I don't remember of anything. I know I was trying to borrow money of different fel-*

lows around, and I tried Mr. Hairston, and I tried different fellows around. *Now, I have no recollection. I know I had to put up these mules and wheat and one thing and another to get what money I got.*" He was asked this question, "Did you ever agree that he (Boggs) should hold any coupons?" To which he replied, *"If I did I don't remember it."* Defendant then asked him, "You wouldn't be right positive about it though now, would you, Mr. Burton?" To which he replied, *"I couldn't say; there might have been something said about coupons,* but I don't remember it." In another place in his testimony he admitted getting a letter from defendant at the time the coupons were assigned to Boggs. While he denies that this letter told him the coupons were assigned to Boggs, yet he admits he understood from it that he was not to get the coupons until Mr. Boggs was paid. He further admits that he made no objection to the company about it and cared nothing about the coupons at the time. The conceded actions of all the parties, the correspondence between Boggs and the company, the testimony of Boggs and Burton's son, the acquiescence of Burton himself in the non-delivery of the coupons to him, are all so consistent with the idea that Boggs did have such an agreement, and show this fact so clearly and cogently, that it would seem that Burton's former denial of it, followed by his admission above shown that he did not remember and couldn't say, but that there might have been something said about coupons, would amount to no evidence whatever that there was no consent of Burton to the assignment. And if this be true, then there was no evidence upon which the court could treat the assignment, which it found was made and which no one disputes, as having been made without authority from Burton. If the assignment was agreed to, then Burton could not have demanded the penalty *if he* had paid off the deed of trust. And plaintiffs have no higher or greater rights than he would have, since they,

by purchasing at the foreclosure sale of the second deed of trust, merely stepped into his shoes.

Plaintiffs cannot claim *in this case* that they were misled by anything Boggs did or failed to do at this foreclosure sale. The defendant company had nothing to do with that foreclosure. It was not represented at that sale, and it took place months after the assignment had been made to Boggs. Neither can plaintiffs enforce the penalty provided by the statute on the ground that plaintiffs were misled by defendant's first letter to plaintiffs, because that letter was not written to plaintiffs until after plaintiffs had purchased at said foreclosure sale. Whether plaintiffs can be required to pay the amount due on these two coupons because of what took place at the foreclosure sale is vastly different from the question whether defendant can be made to pay a penalty for refusing to release as to those two coupons. We express no opinion on the question as to whether Boggs by failing to announce his title to the two coupons at said sale is estopped from claiming that they are now liens upon the land plaintiffs bought. And such failure, if any, to assert his claim, and his alleged silence when it is claimed that the announcement was made that the interest on the prior deed of trust had been paid, may be indeed some evidence that he did not have the right to hold them. But there is no evidence anywhere tending to show or carrying even the slightest inference that the defendant knew that he had no right to take an assignment. It is true that when one deals with an agent he is bound to know that agent's authority unless the principal has so conducted himself as to lead one to believe that the agent has the authority. But there is no evidence anywhere showing that the defendant had any notice whatever that Boggs was acting as Burton's agent. On the contrary, all of Boggs' communications with the defendant show that he was acting for himself, and that he was furnishing the money on condi-

tion that the coupon notes be assigned to him as security and that the coupons were to be sent to him. Therefore, even if there is sufficient evidence to support an inference that Burton did not agree with Boggs that the coupon notes should be assigned to him, still this is not sufficient to support a judgment against defendant enforcing a penalty for failing to release. There is nothing to show that defendant knew or ought to have known that Boggs was not entitled to an assignment of the coupons.

However, passing the question whether there was any evidence tending to show Burton agreed to an assignment, and without deciding whether there was or not, the case may be considered on the assumption that Burton did not in fact agree to an assignment. If the defendant in good faith believed, and had no reason to think otherwise, that Boggs was acting for himself and was entitled to an assignment of the coupons, and defendant assigned said coupons to him, and notified Burton of that fact, and Burton thereafter made no objection thereto, then it is not seen how the defendant company could be penalized under the statute for failure to release. If, as a matter of fact, there was no agreement from Burton that the coupons should be assigned to Boggs, but they were to be paid off and extinguished, this might affect the right of the holder of the assigned coupons to participate in the funds or property covered by the deed of trust, but it would not be conclusive in a suit by plaintiffs, or by Burton, against defendant for the penalty in this suit.

Upon this view of the case there is no evidence anywhere tending to show, or from which an inference can be drawn, that defendant knew, or had any notice, when it received from Boggs the money on the two coupons, that Boggs was Burton's agent and had no right to an assignment thereof. On the contrary, all the information it received was that Burton was acting for himself and was taking up the coupons as as-

signee. Not only did all the letters to the company show this, but Boggs was a stranger to the note and coupons. When a stranger pays his money for a note and takes it up the presumption is that he has bought it and not that he has paid it off. And when he manifests an intention at the time to obtain and hold the note as his own he becomes a purchaser thereof and it is not paid off or extinguished. [Prather v. Hairgrove, 214 Mo. 142; Allen v. Dermott, 80 Mo. 56, 1. c. 59; Swope v. Leffingwell, 72 Mo. 348.] The defendant, therefore, cannot be charged with bad faith or even a lack of care in assigning the coupons to Boggs. It assigned them to him "without recourse, upon the express consideration that the lien of the principal note and all other interest which has accrued or may accrue thereon shall be prior and senior to the lien of the within interest note."

This was done on February 11, 1909. The next day, February 12, 1909, defendant wrote Burton that Boggs had paid the balance due on coupon No. 2 and all of coupon No. 3 "and the same have therefore been assigned to him without recourse on this company." The letter also told him that when he paid the principal note he should show that he had paid Boggs in order to get a full release. *Burton never objected nor made any reply to this letter.* He admits receiving a letter which he did not produce, and attempts to recall what the letter contained. He admitted that he understood from it, however, that he would not get the coupons until he had paid Mr. Boggs, and also admitted that he made no reply to it. Later on, when testifying in answer to a question whether he agreed with Boggs that the latter should hold the coupons, he answered that if he did, he didn't remember it. Defendant then asked him this question:

"Q. You wouldn't be right positive about it though, now would you, Mr. Burton?" To which he made the following answer: "A. I couldn't say; there

might have been something said about coupons, but I don't remember it. *Just like a letter that they got here,* that my son, that he says he got one and he wrote me one, *but I don't remember anything about that letter. In fact I cared nothing about it* and I thought nothing about these coupons.''

Now, even on the assumption that Boggs had no agreement with Burton that the coupons should be assigned to him, still as the defendant had no knowledge other than that Boggs was taking them up as assignee and had no notice to the contrary nor anything to lead a reasonable man to believe otherwise, and as the company notified Burton that the coupons had been assigned to Boggs and Burton made no objection thereto, certainly Burton could not claim the penalty for refusing to release. If Burton entrusted money to his agent Boggs to pay the coupons, and Boggs, in violation of his duty, took an assignment of the notes to himself and the company, without notice of Boggs' agency or of any other fact, assigned them in good faith to Boggs, and notified Burton of that fact and Burton made no objection thereto, certainly Burton would not be in a position to enforce the penalty. And if he could not, how could plaintiffs, since they, by purchasing at foreclosure sale under a deed of trust held by other parties, stepped into Burton's shoes and have no better nor greater rights than he.

This is not a suit to determine whether or not the coupon notes assigned to Boggs are alive and subsisting obligations. It is a suit to penalize the defendant for refusing to release the deed of trust as to coupons which it had assigned to a third party under circumstances that, so far as defendant is concerned, were perfectly right and proper. Burton was notified and clearly acquiesced in it. And it was done for his benefit since it was the only way to save his farm from immediate foreclosure. It will not do to say that inasmuch as Boggs was in reality Burton's agent to pay off the

coupon notes, and consequently the payment by Boggs to the defendant extinguished them, therefore defendant can be held liable for a penalty for refusing to release. It cannot, unless there is some evidence showing the defendant knew the true situation and assigned said coupons knowing they were dead obligations, and then, notwithstanding this knowledge, refused to release. The fact, if it were a fact, that the coupon notes were in reality extinguished when Boggs paid defendant the money therefor, may be a very vital fact if the suit were to enforce the coupons as subsisting obligations, but it cannot affect the question of the defendant's liability to the penalty unless there is some evidence of the company's knowledge thereof at the time the assignment was made.

The judgment is, therefore, reversed. *Ellison, P. J.,* and *Johnson, J.,* concur.