No. 3376

Second Circuit

---

**CITIZENS BANK & TRUST CO. OF RUSTON v. COOK**

---

(December 19, 1928. Opinion and Decree.)

---

Dhu Thompson, of Ruston, attorney for plaintiff, appellee.

Barksdale, Warren and McBride, of Ruston, attorneys for defendant, appellant.

ODOM, J. The defendant prosecutes this appeal from a judgment condemning him to pay to the plaintiff bank the sum of ONE THOUSAND ($1,000.00) DOLLARS, together with interest thereon.

The facts necessary to be stated at this time are that, on February 10, 1919, W. S. Willhite and his wife borrowed the sum of $1,000.00 from the defendant, Cook, and, as evidence of the debt, executed their promissory note for that sum, due one (1) year from its date, and, to secure said debt, mortgaged certain real property situated in Jackson Parish—the mortgage and the note being made payable to the said W. H. Cook. The note was not paid by Willhite when due, and was extended on two separate occasions. At some time, just prior to August 3, 1923, the defendant, Cook, pressed Willhite to pay the note. Willhite, being without means, arranged with the plaintiff bank to take up the note for him, and notified Cook to call at the bank and get his money. Cook took the note to the bank, endorsed it "without recourse," and was paid the face value thereof. That was on August 3, 1923, after the maturity of the note. The bank held the note until 1925, when it attempted to

collect it from Willhite by suit, but failed, because, previously, Willhite had been adjudged a bankrupt and had been discharged. The bank, it seems, scheduled its claim in the bankruptcy proceedings, but was paid nothing.

The plaintiff bank, by its present suit, is pursuing Cook for the amount which it paid him, together with interest thereon.

Cook presents two defenses; first, that the transaction which took place between him and the plaintiff bank on August 3, 1923, when he delivered the note and received face value therefor, was not a sale of the note, but constituted a payment thereof by the bank as the agent of Willhite, the maker; and second, that, if it be held that the transaction was a sale, then he was relieved of any obligation to the bank on account of his endorsement of the note, "without recourse."

Taking up these defenses in the order stated, it is shown that Cook presented the note to the bank at the request of Willhite, the maker, after Cook had informed him that he must pay it. There had been no previous negotiations between the bank and Cook. When Cook demanded payment of the note by Willhite, he, being unable to meet the obligation, asked Dud Holland to take up the note for him. Holland refused. Willhite then asked the plaintiff bank to take it up for him, and the bank agreed to do so. Whereupon Willhite saw Cook, according to Willhite's testimony, and told him "to go to the bank and get his money, that I had made arrangements at the Citizens Bank and for him to go and get his money." Willhite did not borrow any money from the bank, but merely got the bank to agree to take up and carry the note for him. Cook testified that he "saw Willhite about a month or so before the note was due, and I told him

I would have to have my money * * * I told him I would have to collect the note as I needed the money, and he told me he would make arrangements for me; for the money, and I saw him later on, down on the streets, and he told me to take that note around to the Citizens Bank & Trust Company and get my money * * * I carried the note around and he (meaning Breed, the cashier) paid off."

He further testified that he did not intend to sell the note to the bank, but understood that the bank was paying it for Willhite.

Cook further stated that when he presented the note to Breed, the cashier, "I told him that Willhite told me to bring that note up here that I held against him and get the money, it amounted to something like $1,000.00," and that the money was then and there paid to him.

He admits that he endorsed the note at the time and said, "I couldn't tell you why I did that—'without recourse.' Didn't amount to anything, I didn't think."

The transaction was handled for the bank by Breed, the cashier. He testified that Willhite had no money in the bank at the time; that the note was not paid by the bank for Willhite, but was purchased by the bank from Cook at Willhite's request.

Under the testimony, as above detailed, we hold that the transaction between Cook and the bank constituted a transfer and not a payment of the note. In determining whether transactions of this kind amount to a sale or whether they are payments of negotiable instruments, we must look to the intent of the parties. That the plaintiff bank intended to purchase the note in question is beyond dispute. Breed, the cashier, positively so testified, and his testimony is borne out by the facts that

Willhite did not request the bank to pay the note, but to take it up and carry it for him; that Willhite had no funds in the bank with which to pay it, and made no subsequent arrangements for a loan to replace the amount paid by the bank to Cook; and that Cook was required by Breed, the cashier, to endorse the note and that it was not marked paid, but was held by the bank for two years, when suit was filed to collect it.

As to Cook, he knew that the bank did not intend to pay the note, but was purchasing it, as evidenced by the fact that, when called upon he endorsed the note, which endorsement was necessary only for the purpose of a transfer, as the note was made payable to him or his order. There was no suggestion or intimation to him, either by Willhite, the maker, or Breed, the cashier, that the bank was paying the note. On the contrary, the acts and declarations of the parties and the surrounding circumstances, all go to show that Cook intended to sell and the bank intended to purchase the note.

If, however, the testimony left any doubt as to the intention of the parties, we should resolve that doubt in favor of the bank on the legal presumption that the transaction was intended as a transfer and not as a payment.

In Wing vs. Union Central Life Insurance Company, 181 Mo. App. 381, 168 S. W. 917, and in Cantrell vs. Davidson, 180 Mo. App. 410, 168 S. W. 271, it was held that where a stranger to a note pays his money therefor and takes it up, the presumption is that he has bought it.

"If a bill or note is paid after its maturity by a stranger to the paper, it will in general be held to be a purchase and not a payment of the instrument." 8 C. J. 588.

Under the Negotiable Instruments Law, Act 64 of 1904, Section 30, if a note is payable to order, it is negotiable by endorsement of the holder, completed by delivery. The requirements for the transfer of this note were fulfilled. The note was payable to Cook and he endorsed it and delivered it to the bank. In the absence of an express agreement that the note was to be paid, he can not, under the circumstances, be heard to say that this was a payment and not a sale of the note.

Cook's plea that his endorsement "without recourse" released him from any obligation to the bank is equally unavailing. He sold the note to the bank, a good faith purchaser, for a sound consideration, the full face value thereof. By that sale, he warranted that the note was what it purported to be and that he had "no knowledge of any fact which would impair the validity of the endorsement or render it valueless." Negotiable Instruments Law, Act 64 of 1904, Section 65.

The note on its face purported to be a mortgage note. It bears on its face the legend "Ne Varietur," "Identified with Act of Mortgage. Executed before me this 10 day of February, 1919. Robbie D. Ramsey, Dy. C. D. C. and ex-officio Notary Public."

The note may be said to be in fact a mortgage note. But Cook warranted more than that; he warranted that he had no knowledge of any fact "which would impair the validity of the instrument or render it valueless." If then, as matter of fact, Cook knew of any fact which rendered the note valueless, and failed to disclose that fact to the bank at the time he transferred it, he was guilty of a legal fraud and is liable for his breach of warranty. Fraud may be committed by a suppression of the truth, as well as by a deliberate misstatement of the facts.

Here are the facts pertinent to the issue involved: Cook loaned Willhite $1,000.00 on February 10, 1919, and took his note for that amount, secured by mortgage on real property; he took the note and the original act of mortgage, carried them to Ruston, where he put the mortgage in his box at a bank. The mortgage, although dated February 10, 1919, was not filed and recorded until November 29, 1928, nearly four years later. In the meantime, on October 3, 1919, Willhite, the mortgagor, sold the land described in the mortgage. The mortgage, not having been recorded previous to the sale, did not affect the land in the hands of Willhite's vendee, and, therefore, the security for the debt was lost. Cook, the holder of the note, was informed by the Clerk and Recorder by letter in November, 1922, that the act of mortgage had not been recorded, and further, that Willhite had sold the land. Cook admits receipt' of the letter and also admits that the Clerk conveyed to him this knowledge in conversation. After' having been reminded by the Clerk that the mortgage had not been recorded and that the property on which it rested had been sold, Cook delivered the act of mortgage to the clerk and it was duly filed and recorded. Knowing these facts, knowing that the security for his debt had been lost by his failure to record the mortgage timely and prior to the sale of the land by Willhite, he sold the note to the plaintiff bank in August, 1923, more than eight (8) months after these facts were by him discovered. Admittedly, he did not disclose these facts to the plaintiff bank at the time he sold the note for its full face value, and the plaintiff at the time had not gained knowledge of them otherwise.

Under the plain letter of the law, by the sale of the note to the bank, even though under an endorsement "without recourse", Cook warranted that he knew of no fact which would render the note valueless. By suppressing the truth, he committed a fraud upon the purchaser and breached the statutory warranty; and, as he was paid full value for the note, he must now respond to the bank.

In the case of Cresder vs. Brown, 79 Okl. 170, 102 Pac. 417, the Supreme Court of Oklahoma held, construing the Uniform Negotiable Instruments Law, that if one acquired a negotiable instrument without consideration and then assigned it for a valuable consideration, endorsing it "without recourse" when, as a matter of fact, said note was without consideration, he is responsible to the purchaser for breach of warranty; and further held that an endorsement "without recourse" by the payee of a negotiable promissory note contains as a term thereof, with the same force and effect as if expressly written therein, the statutory warranty that he has no knowledge of any fact which would render it valueless.

Aside from his obligations, under the Negotiable Instruments Law, Cook is bound, as a vendor of the note, even though he endorsed it "without recourse," under our code and jurisprudence, to return to the bank the amount which he received, with interest.

"One who sells a credit or an incorporeal right, warrants its existence at the time of the transfer, even though there was no warranty expressed." C. C. 2646.

And:

"The sale or transfer of a credit includes everything which is an accessory to the same, as suretyship, privileges and mortgages." C. C. 2645.

In the case of Templeman vs. Hamilton & Company, 37 La. Ann. 754 (760), the Court said:

"It is no longer an open question in our jurisprudence that the assignor of an in-

corporeal right, even without warranty, guarantees not only the existence of the right under the express terms of Article —, of the Civil Code, but also the existence of the accessory securities attached and transferred with it."

And the Court then quoted from Troplong, as follows:

"When a credit secured by a mortgage is sold, it is not sufficient that the credit should exist, it is necessary that the mortgage should be entire at the time of the contract. If a part of the property was at the time freed from the mortgage, the transferor would be bound to guarantee the transferee, who thus fails to find all the securities on which he counted, the absence of which may endanger the capital which is due to him."

In the case of Corcoran vs. Riddell, 7 La. Ann. 268, a judgment was sold without recourse. It developed that the judgment had no legal existence, and the vendor was required to return the price he received. The Court said:

"But the Code is very stringent on this point, and has expressly provided that even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restoration of the price, unless the buyer was aware at the time of the sale of the danger of eviction, and purchased at his risk and peril. This principle of the contract of sale applies not only to the sale of corporeal things, but also to the sale of a debt."

C. C. 2616 (2646). See Toler vs. Swayze, 2 La. Ann. 881; Johnson vs. Boice, 40 La. Ann. 273, 40 So. 163; Bruning vs. City of N. O., 122 La. Rep. 316, 47 So. 624; Jenkins vs. Parish of Caddo, 7 La. Ann. 559; Bienvenu vs. The Citizens Bank, 6 La. Ann. 523; Rutherford vs. Hennen, 13 La. Ann. 336.

The note which Cook sold to the bank purported on its face to be secured by a mortgage, and, when he sold the note, he sold its accessory right, the security. But there was no security. It had been destroyed by the failure to record the mortgage prior to the sale of the land by Willhite, and Cook knew that. By his contract of sale, even without recourse, he warranted that the note was secured by a mortgage on real estate, when as a matter of fact, that was not true. Under our code and jurisprudence, he must refund to the bank the price which he received for the note, with interest, it being conceded that the bank purchased in good faith and without knowledge that the security had been lost.

Counsel for Cook argue that the bank was not a good faith purchaser on account of Cook's endorsement "without recourse." Our investigation discloses that all the jurisprudence is the other way.

Plaintiff asks that the judgment be so amended as to allow attorney's fee, but this is not a suit on a promissory note and we find no warrant for allowing attorney's fee in a case like this.

Finding no error in the judgment appealed from, we affirm it, with costs in both courts.