## LEMOINE v. CITY OF SHREVEPORT.
### No. 5071.

Court of Appeal of Louisiana. Second Circuit.
July 15, 1935.

See, also, 152 So. 689, 178 La. 1014.

J. H. Jackson and R. H. Switzer, both of Shreveport, for appellant.

L. Percy Garrot, of Shreveport, for appellee.

TALIAFERRO, Judge.

The city of Shreveport paved or caused to be paved the street adjacent to lots owned by J. J. Lyons therein. Thereafter, by ordinance, said paving was accepted, liability of the abutting lots for its cost fixed, and assessment levied therefor. This ordinance was registered in the mortgage records, but not within the ten-day period required by section 7 of Act No. 168 of 1926, and therefore the lien created by its registry did not prime pre-existing encumbrances against the lots. City of Shreveport v. Urban Land Company, 177 La. 357, 148 So. 256; Id. (La. App.) 146 So. 894.

When the paving was laid, the lots were encumbered by a mortgage held by a Shreveport Bank for an amount in excess of $6,000.

Lyons executed his sixteen notes to the city in the aggregate sum of $1,775.67, stipulating 8 per cent. interest and 10 per cent. attorney's fees, as authorized by the statute and the ordinance accepting the paving and fixing liability therefor, to defer payment of the cost of the paving in front of his property. The city issued customary paving certificates in connection with the matter, which also contained a provision for payment of like attorney's fees, and sold them and Lyons' notes to plaintiff. The notes and certificates were indorsed by the city "without recourse."

The holder of the first mortgage against the property foreclosed thereon in November, 1932. At sheriff's sale it brought only $3,000, and the paving lien was canceled.

This left plaintiff without any security whatever to pay the Lyons notes and the paving certificates. He thereafter sued Lyons on the notes and certificates and obtained judgment for the amount of same, with interest and 10 per cent. attorney's fees, with recognition of the paving lien and privilege securing their payment. A fi. fa. issued on this judgment was returned "nulla bona." The city then, recognizing its liability to plaintiff to that extent, paid to him the principal of and accrued interest on the judgment against Lyons, but denied liability for and refused to pay the attorney's fee, which amounts to $230.60. This suit was brought to compel the city to pay this fee.

From a judgment for plaintiff, the city brings this appeal.

The case was tried upon agreed stipulations. The sole question for determination is whether or not, under the facts alleged in plaintiff's petition, which we have in substance set out above, defendant is liable, as a matter of law, for payment of the attorney's fee sued for.

The contention of plaintiff is reflected from the following excerpt from his brief:

"Of course, the City of Shreveport, by virtue of its qualified endorsement, warranted that the paving notes and certificates were genuine and all that they purported to be. Inasmuch as Dr. LeMoine's paving lien did not come ahead of the mortgage of the Continental-American Bank & Trust Company, the notes and paving certificates were not what they purported to be. The question is, therefore, whether or not the City warranted that, in the event the notes and paving certificates were not what they purported to be, it would pay Dr. LeMoine, not only the principal and interest of said notes, but also attorney's fees. The City says the warranty does not include a warranty to pay attorney's fees, and we say it does."

Defendant's contention, in support of its denial of liability for the fee, appears from the following taken from its counsel's brief:

"Unquestionably the liability of the defendant in this case, as held by the Court of Appeal, Second Circuit, in Cook v. Le-moine, 149 So. 263, is governed by Revised Civil Code, Articles 2505, 2506 and 2507.

"These articles have been construed on a number of occasions by the Supreme

Court and it has been uniformly held that a warrantor is not liable for attorney's fees."

■ The city, having transferred the notes and certificates by qualified indorsement, cannot be held to the same measure of responsibility thereon, quoad the paper itself, as would be the case had its indorsement been without qualification. So far as regards its responsibility as a warrantor of the existence of the character of security held by it, guaranteeing payment of said paper, the nature of its indorsement is of little importance. Responsibility is the same in each circumstance.

"The sale or transfer of a credit includes everything which is an accessory to the same; as suretyship, privileges and mortgages." Civ. Code, art. 2645.

"He who sells a credit or an incorporeal right, warrants its existence at the time of the transfer though no warranty be mentioned in the deed." Civ. Code, art. 2646.

The Negotiable Instrument Law (Act No. 64 of 1904) goes further than these articles of the Code in defining the nature and extent of the warranty of the negotiator of an instrument by qualified indorsement. Section 65 reads in part as follows:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants,—

"1. That the instrument is genuine and in all respects what it purports to be; * * *

"4. That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless."

These principles have existed in the Law Merchant from time immemorial. They are embodied in the Uniform Negotiable Instrument Law now in effect in nearly all, if not all, of the states of the Union. Using these general principles as a predicate to support its reasoning, the Supreme Court in Toler v. Swayze, 2 La. Ann. 880, while discussing the liability of the seller of a judgment which had been previously discharged, said:

"When a debt is assigned the warranty is, not merely that the debt exists, but that it exists such as the parties understood it, that is, accompanied and protected by all the securities contemplated in the contract of assignment."

In Templeman v. Hamilton, 37 La. Ann. 754, the court had before it the transfer of mortgage notes by indorsement "without recourse," and said:

"It is no longer an open question in our jurisprudence that the assignor of an incorporeal right, even without warranty, guarantees not only the existence of the right under the express terms of art. [2646], C. C., but also the existence of the accessory securities attached to and transferred with it. [Civil Code 2645.]

"Troplong says:

" 'When a credit secured by mortgage is sold, it is not sufficient that the credit should exist, it is necessary that the mortgage should be entire at the time of the contract. If a part of the property was, at that time, freed from the mortgage, the transferror would be bound to guarantee the transferree, who thus fails to find all the securities on which he counted, the absence of which may endanger the capital which is due to him.' Vente, § 933.

"This proposition has been several times quoted and applied by this Court in cases of assignments without recourse. Toler v. Swayze, 2 La. Ann. 880; Corcoran v. Riddell, 7 La. Ann. 268; Jenkins v. Caddo, 7 La. Ann. 559; Bienvenu v. Citizens' Bank, 6 La. Ann. [523] ,524; Rutherford v. Hennen, 13 La. Ann. 336."

Justice Fenner, in the course of this opinion, referring to the nature of Hamilton & Co.'s liability as transferor of the mortgage notes, said:

"The latter's warranty partook of the nature of suretyship, and bound them to respond only in case the remaining valid mortgage, properly administered and enforced, should fail to satisfy the debt."

In Collins v. Jones, 152 So. 802, 804, we gave consideration to this legal principal, an assignment of an invalid judgment being involved, and held:

"One selling a debt or incorporeal right not only warrants his title thereto, but also warrants existence of the debt or right sold, and that it exists as the parties understood it, accompanied with all the securities contemplated by the contract of sale."

In Bruning v. City of New Orleans, 122 La. 316, 47 So. 624, it was held that the city was responsible to plaintiff, the contractor, for the amount of paving certificates and 6 per cent. per annum, interest thereon, delivered to him in settlement of the amount due him for paving certain streets of the city, under contract between

them, where it had been held by the Supreme Court that because of the failure of the city to give the property owners notices required by law, the lien and privilege designed to secure payment of the certificates never came into existence. It is worthy of note that the court allowed the contractor interest at the same rate as was stipulated in the certificates, which was in excess of the legal rate due on obligations where no rate is fixed by law or the convention of the parties. No attorney's fee was sued for in that case. The statutes under which the paying was done did not authorize imposition of such a fee against the abutting property in event suit was filed to enforce the assessments made against it, or on the certificates issued in payment of the assessment.

 Section 8 of Act No. 168 of 1926, is as follows:

"The amounts assessed in said ordinance or resolution, shall be due and exigible immediately upon the passage of said ordinance or resolution and if the same be not paid within ten days after the passage of said ordinance or resolution, the municipality or its transferrees shall have the power to proceed by suit against the assessed properties and the owners thereof to enforce collection of the amounts of said assessments, together with six per centum per annum interest from date of acceptance of the work and ten per centum of the amount of the judgment as attorney's fees."

This statute went further than those involved in the Bruning Case. It definitely provides that the municipality, or its transferee, shall have the power to proceed by suit against the assessed property to enforce collection of the assessment, "together with six per centum per annum interest * * * and ten per centum of the amount of the judgment as attorney's fees." Therefore, under a paving assessment, a municipality, or its transferee, by the express terms of this law, in event of default of the owner in paying the assessment against his property within ten days after passage of the ordinance levying the assessment, has the right to demand that the property be sold to pay the principal amount due, interest thereon, and 10 per cent. attorney's fees, all of which is secured by the lien and privilege provided for in section 7 of the act. The amount of the assessment, plus accrued interest, is a definite and fixed liability of the proper-

ty. Liability for payment of attorney's fee is definite as to amount, but contingent in other respects. It becomes fixed when suit is instituted, but is nevertheless a charge against the property and payment thereof is secured by the same lien and privilege which secures payment of the principal and interest of the assessment. The debt, the existence of which was warranted by the city, includes attorney's fee. Failure to timely register the ordinance making assessment against the abutting property carried with it not only the loss of the lien and privilege securing payment of the assessment, with interest, but also loss of the right to enforce the lien and privilege to recover the attorney's fee. Section 9 of the act simply gives the property owner the right to defer payment of the cost of paving assessment against his property by paying one-tenth thereof in cash and executing his nine notes to the municipality for the balance, maturing over a period of nine years, which shall be secured by said lien and privilege, and shall bear 6 per cent. interest and "ten per centum attorney's fees if placed in the hands of an attorney for collection after maturity, which said notes when paraphed by the municipal Clerk * * * shall carry with them in the possession of any bona fide owner the lien and privilege above provided." This lien, if recorded timely, primes all other encumbrances on the property described therein, save taxes.

Now, when the city transferred the notes and certificates to Dr. Lemoine, it warranted inter alia that their payment in principal and interest, plus attorney's fee, was secured by a first lien and privilege, duly recorded, and that it had no knowledge of any fact which would render the paper valueless, when, as a matter of fact, the paper was then valueless, because of the negligence of some one acting for the city. It warranted, and in a sense, as was said in the Templeman Case, supra, became surety to plaintiff to the extent that if he had to sue to enforce payment of this paper, he was not only protected by a first lien and privilege as to the principal and interest of the notes and costs, but also in recovering counsel fee not to exceed 10 per cent. of his claim. Assurance against having to pay counsel fee, in case one has to sue on commercial paper, from the principal of an investment, is of considerable importance to an investor and renders attractive paper as an investment when such would not be true without such a provi-

sion. Both parties thought the notes and certificates were fully secured by a first lien and privilege, the existence of which was apparently reflected from their face, and, as was said in the Toler Case, the warranty was not only that the debt, composed as aforesaid, existed, but that it existed as such as the parties understood it, that is, "accompanied and protected by all the securities contemplated" by the transfer. In this case, what was the debt which was thought to be "accompanied and protected by all the securities contemplated" by the transfer? It certainly was the principal and interest of the paper, plus attorney's fees of 10 per cent. The obligation of the city on its warranty to pay the principal and accrued interest on the paper is conceded. In response to that obligation, the principal and interest of the judgment against Lyons has been paid by it. Under the same obligation, it is bound for the statutory attorney's fee.

Able counsel for appellee say that the measure of a warrantor's liability to his transferee is only for the return of the purchase price and interest, citing articles of the Civil Code pertinent to the question, and many decisions of the courts sustaining this contention. But, in all these cases the warrantor's liability arose from a sale of real estate or personal property, and in each the seller was held bound for return of the purchase price with legal interest. No question of the warranty of the existence of a first lien and privilege to secure a debt was involved. However, in these cases, had the sellers stipulated in the sale that in case of eviction of the vendee from the solden property, he would pay the purchaser's attorney's fee to the extent of 10 per cent. of the purchase price, no one would question the validity of such a stipulation. We have mentioned heretofore that in the Bruning Case the court allowed the certificate holder interest in excess of the legal rate, which indicates at least that the rules governing warranty liability in sales are not controlling in a case of this character. In determining the measure of the liability of the warrantor in the present case, it is necessary to consider and construe different laws in pari materia. These include articles of the Civil Code, sections of the Negotiable Instrument Law, and Act No. 168 of 1926, to which may be appropriately added equitable principles. We are quite certain the Codal articles alone are not to be considered in correctly reaching a conclusion on the issues. There is no Codal article which carries the principle announced in the Toler Case, which was enlarged upon in the Templeman Case, but no one will question the soundness of these decisions, nor that the ends of justice abundantly warranted the holding in each case in the respect mentioned.

In State ex rel. Wheless Investment Co., Ltd., v. City of Shreveport (La. App.) 142 So. 641, the facts of which are on all fours with the present case, we held that the city was liable to Dr. Lemoine for the statutory attorney's fee and the same rate of interest as was stipulated in the paper he acquired from it. The Supreme Court refused to review the case on application for certiorari, thereby approving what we said on the subject.

Counsel for defendant rely to some extent upon Citizens Bank & Trust Co. of Ruston v. Cook, 9 La. App. 540, 121 So. 306, decided by this court. In that case attorney's fee was not allowed, though asked for. It does not appear from the court's statement of the facts of the case that either the note or the mortgage involved carried an agreement on the part of the maker to pay such fee. The court did not consider or discuss the matter to any great extent, but dismissed the contention with the statement that the suit was not on a promissory note, and no authority could be found for allowance of such fee in the case. The facts of the present case are very much different from those of the cited case, as will appear from a study of the two. We do not think it authority for rejecting plaintiff's demands.

For the reasons assigned, the judgment appealed from is affirmed, with costs.

DREW, J., dissents.