[Civ. No. 6094.  Third Appellate District.—May 29, 1939.]

GEORGE A. PROCTOR, Respondent, v. IRA D. PYLE et al., Defendants; GROUSE HILL LAND COMPANY (a Corporation), Appellant.

George C. Faulkner, William T. Doyle and Faulkner, Doyle & Sanford for Appellant.

Barrett & McConnell, Geary & Geary & C. J. Tauzer and A. Dal Thomson for Respondent.

THOMPSON, J.—The defendant, Grouse Hill Land Company, has appealed from a judgment foreclosing a mortgage of $9,500 on the "Dawson Ranch" in Sonoma County, consisting of 1938 acres of land, excepting therefrom 213.71 acres which were released from the mortgage lien.

The chief defenses to the foreclosure proceeding were the contentions that plaintiff was not the owner or holder of the note and mortgage, and that the note which was secured by the mortgage was previously paid and the indebtedness completely extinguished.

The transactions culminating in the execution of the note and mortgage are complicated.

The defendant, Ira D. Pyle, resides at Santa Rosa and is engaged in a real estate business. In 1924 he owned a large ranch in that county, called the "Cooper Ranch", subject to a mortgage of $23,000. With the agreement to purchase and operate this Cooper ranch as a hunting club, the Grouse Hill Land Company was incorporated in September, 1924. The directors and officers thereof were the defendant, Ira D. Pyle, Howard Ladd and Dr. B. J. Stickel. Pyle was the secretary, treasurer and manager of the company. The corporation claimed an equity in the land valued at the sum of $13,000, together with a further uncertain sum expended for improvements on the land. Contrary to the agreement, Pyle failed to deed or transfer the land to the corporation. In 1926, he informed the stockholders of the corporation that the holder of the $23,000 mortgage on the Cooper ranch threatened to foreclose it, but that he could sell their equities and advised investing the receipts thereof in an adjoining ranch of 1938 acres, called the "Dawson Ranch", which the corporation could purchase for $9 an acre. This was agreed upon. Pyle sold the equities of the shareholders in the corporation to his brother C. C. Pyle and Red Grange for $13,000 in cash. The Cooper ranch transaction is not involved in the present mortgage foreclosure suit except that it furnishes evidence of the source from which a portion of the funds were derived with which the Dawson ranch was subsequently purchased.

The Dawson ranch was owned by three Dawson brothers. That 1938-acre tract was purchased by Ira D. Pyle for $9 an acre, aggregating the sum of $17,442. Mr. Pyle took title to that ranch in his own name, paying the grantors $7,942 in cash, and executing and delivering to them his personal note for the balance of the purchase price, to wit: $9,500, due March 27, 1931, at 6 per cent interest payable semi-annually, secured by a mortgage on the entire ranch. Mr. Pyle failed to account to the Grouse Hill Land Company for $5,058 received from the sale of the Cooper ranch. He subsequently deeded to the corporation only 1724 acres of the Dawson ranch, retaining in his own name title to 213.71 acres thereof. The controversy over the title to this last-mentioned tract of land was not in issue nor was it determined by the court

in this action. The shareholders in the corporation claim they did not discover the withholding by Mr. Pyle of the sum of $5,058 of the proceeds of sale of the Cooper ranch nor the retaining of the record title to the 213.71-acre tract of the Dawson ranch until December, 1930.

Mr. Dawson had no knowledge of any dispute between Pyle and the corporation regarding the proceeds derived from the sale of the Cooper ranch, or of the title to the 213.71-acre tract retained by him. Mr. Dawson dealt only with Mr. Pyle in the transaction involving the purchase of the note and mortgage. He had no knowledge of any interest claimed by the corporation.

The Pyle note for $9,500 matured March 27, 1931. Prior to its maturity, and on December 13, 1930, the note and mortgage were assigned to W. O. Dawson, one of the original owners thereof who thereby became the sole owner and holder of the instruments. In the first part of May, 1931, Dawson demanded of Pyle the immediate payment of the note threatening to foreclose the mortgage if he did not do so. Pyle then attempted to persuade the plaintiff, George A. Proctor, to purchase the note and mortgage. The plaintiff urged Marion Cooper to buy the note and mortgage. Cooper encouraged the plaintiff to believe that he might raise the money and procure the purchase of the note and mortgage. Arrangements were made to borrow the purchase price of the note, to wit, $9,500 from Mrs. O. K. Cooper (now deceased), the wife of Marion Cooper. Pursuant to that agreement, Dawson, Marion Cooper and Pyle met in the office of Mr. Pyle to close the bargain May 25, 1931. At that time Marion Cooper executed and delivered to W. O. Dawson his personal check for $500 as part purchase price of the note and mortgage, with the agreement that upon the payment of the balance of the purchase price, to wit, $9,000, Dawson would assign the note and mortgage to the plaintiff. Immediately after the $500 check was executed and delivered to Dawson, the parties went to the office of the Abstract Company in Santa Rosa, where an assignment of the mortgage was duly prepared and left to be delivered to the purchaser thereof upon completion of the transaction. The name of the assignee was, however, then left blank.

June 1, 1931, W. O. Dawson, Ira D. Pyle, the plaintiff George Proctor, and Marion Cooper again met in the abstract

office and the purchase of the note and mortgage by the plaintiff was completed. Both instruments were then assigned by Dawson and delivered to the plaintiff. The $9,000 check for the balance of the purchase price had been previously drawn by F. M. Cooper, who is the same person called Marion Cooper, payable to his wife, Mrs. O. K. Cooper, from whom the money was borrowed. Mrs. Cooper drew the money from her savings account in the Exchange Bank and deposited it in her husband's account. The check was drawn by him in the name of his wife to preserve a history of the transaction. This check was endorsed by Mrs. O. K. Cooper and also by Ira D. Pyle. It was then placed on the counter in that abstract office for Mr. Dawson, who subsequently endorsed the check and cashed it the following day. Marion Cooper took the assignment to the Recorder's office and had it recorded. Mr. Pyle accompanied him on that occasion. Neither the note, mortgage nor assignment was delivered to Mr. Pyle. The transaction was conducted in the name of the plaintiff, George A. Proctor.

The loan from Mrs. O. K. Cooper was represented by a promissory note dated June 1, 1931, payable to her fifteen months after date with interest at the rate of 7 per cent per annum, payable quarterly. It was signed by Ira D. Pyle, George A. Proctor and her husband, Marion Cooper. We may reasonably assume Mr. Pyle signed that note to enable Mr. Proctor to borrow the money with which to purchase the note and mortgage so as to delay the foreclosure proceedings and particularly to secure a release of 213.71 acres from the mortgage lien for the benefit of the defendants. That purpose is clearly expressed in the agreement which was executed by the interested parties on the same date that the Cooper note was made.

On June 1, 1931, as a part of the transaction by means of which the note and mortgage were transferred to the plaintiff, Ira D. Pyle, as party of the first part, and George A. Proctor and Marion Cooper, as parties of the second part, joined in a written agreement with respect to the mortgaged property. It is our opinion this document confirms the findings of the trial court that the plaintiff became the purchaser of the note and mortgage from W. O. Dawson, and that he did not borrow the money for and in behalf of Ira D. Pyle,

with which to satisfy the debt and extinguish the note and mortgage.

This written agreement clearly indicates that the parties thereto considered the plaintiff, George A. Proctor, the purchaser of the note and mortgage. He testified at the trial that he was the owner and holder of that note and mortgage in the following language: "Q. You are now the owner and holder of the note and mortgage described in the complaint? A. I am."

The purpose of the agreement was apparently to prevent an immediate foreclosure and to conditionally authorize Pyle to attempt to sell the 213.71-acre portion of the mortgaged Dawson ranch to which he retained title in his own name, provided the entire indebtedness of $9,500, together with interest and costs, was fully satisfied upon foreclosure sale. The agreement provides that immediately upon the execution and delivery to plaintiff of the assignment of the note and mortgage, he will release to Ira D. Pyle from the mortgage the 213.71-acre tract. That release was subsequently duly executed by the plaintiff. The court found that the release was made June 2, 1931, without the knowledge of the corporation. The agreement specifically provides that in the event that Mr. Pyle failed to sell the 213.71-acre tract within ninety days of the expiration of the period for redemption, that tract of land should still be held as security for the payment of the $9,500 note. The purchase price of that land was $9 an acre. As an equitable consideration, the trial court allowed the defendants in the foreclosure proceeding a credit of $9 an acre for the 213.71-acre tract of land, aggregating the sum of $1923.39. The agreement also provides that the parties of the second part, Cooper and Proctor, will be held harmless on account thereof.

This suit for foreclosure of the mortgage was subsequently filed. The defendant, Ira D. Pyle, failed to appear or answer the complaint. His default was entered. The demurrer of the Grouse Hill Land Company was overruled, and its answer was filed, in which the essential allegations of the complaint were denied. It was affirmatively alleged that the plaintiff was not the owner or holder of the note and mortgage; that Mr. Proctor borrowed the money from Mrs. Cooper for the benefit of the defendant, Ira D. Pyle, and that the plaintiff paid the note and extinguished the indebtedness at the re-

quest and in behalf of Mr. Pyle. The corporation further charged that the transfer of the note and mortgage from Mr. Dawson to the plaintiff and the subsequent foreclosure proceedings were the result of fraud and conspiracy between the parties thereto.

The court adopted findings favorable to the plaintiff in every respect, determining that the $9,500 note and mortgage were executed by Ira D. Pyle, March 27, 1926, as a part of the purchase price of the Dawson ranch; that the plaintiff purchased from W. O. Dawson those instruments for the sum of $9,500; that they were duly assigned to him, and he thereby became the owner and holder thereof; that the Grouse Hill Land Company claims some right or title in the land secured by the mortgage, "but that said claim, title, interest, or lien of said defendant, if any it has, and the whole thereof, is subsequent, subject and subservient to the lien of said mortgage whereon plaintiff brings this action"; that said promissory note of $9,500 is due and unpaid, upon which a credit for the value of said 213.71 acres of land at $9 per acre, aggregating the sum of $1923.39 should be allowed as of June 1, 1931, leaving an unpaid balance due on the note and mortgage of $7,576.61 with interest at 6 per cent per annum, payable semi-annually from the last-mentioned date, together with costs and counsel fees provided for in the mortgage. The respondent is not complaining of the credit which was allowed on account of the value of the released tract of 213.71 acres of land. The mortgage was not foreclosed as to that tract. It is not affected by the foreclosure proceedings. Any controversy between the corporation and Mr. Pyle regarding the title to that property may be determined in a proper action.

Upon the findings above referred to judgment was rendered against the defendants for only $7,576.61 with interest, costs and counsel fees. The decree of foreclosure directed the sale only of 1724 acres of the Dawson ranch to satisfy the judgment. It excludes the 213.71-acre tract released to Mr. Pyle. The judgment authorizes a deficiency judgment to be entered against Ira D. Pyle only. The corporation is not liable for any deficiency judgment. From the judgment and decree of foreclosure the Grouse Hill Land Company has appealed.

■ In spite of a serious conflict of evidence the proof is adequate to support the findings and judgment to the effect that the plaintiff, George A. Proctor, purchased the note and mortgage from W. O. Dawson and that he was the owner and holder thereof and therefore entitled to maintain the action of foreclosure. The evidence satisfactorily shows that Mr. Pyle took title to the 1938-acre Dawson ranch in his own name, and that he executed the note and mortgage March 27, 1931, in his own name to secure the unpaid portion of the purchase price of the land; that Mr. Pyle subsequently conveyed to the corporation, Grouse Hill Land Company 1724 acres of that land, subject to the mortgage; that in May, two months after the note matured, W. O. Dawson, the owner of the note, demanded payment thereof, which the defendants were unable to make; that Mr. Pyle sought to delay the foreclosure proceedings with the object of saving from foreclosure the 213.71-acre tract which was also mortgaged, but still remained in his name; that Mr. Pyle succeeded in interesting the plaintiff, George A. Proctor, in purchasing the note and mortgage, with an agreement that he would conditionally release from the mortgage the last-mentioned tract; that pursuant to that plan Mrs. O. K. Cooper loaned Mr. Proctor $9,500 with which he purchased the instruments.

By the terms of the written agreement it is provided that ''upon the delivery of an assignment of the aforementioned mortgage to George A. Proctor, the said George A. Proctor shall forthwith release from said mortgage to the party of the first part 213.71 acres''. The agreement then proceeds to specify the obligations imposed upon Mr. Pyle on account of that release after the mortgage on the balance of the ranch has been foreclosed. This agreement is absolutely inconsistent with appellant's theory of a payment of the note and satisfaction of the entire mortgage. It contemplates a foreclosure of the mortgage on the remaining 1724 acres of the ranch by the plaintiff. We therefore conclude that the note and mortgage were not paid and satisfied, but merely sold and transferred to the plaintiff who thereby became the owner and holder of the instrument.

In the present case the evidence indicates beyond doubt that George A. Proctor was not voluntarily paying the debt represented by the note and mortgage of Ira D. Pyle or the Grouse Hill Land Company. The agreement to release 213.71

acres of the tract refutes the theory that the transaction was intended as an extinguishment of the indebtedness. That instrument clearly contemplates foreclosure of the mortgage after Dawson parted with his title to the note. The agreement merely released conditionally a portion of the ranch in an effort to enable Mr. Pyle to try and save something from the wreck. The conduct of Mr. Pyle shows conclusively that he knew the transaction did not extinguish the debt nor satisfy the mortgage. He was present when the note and mortgage were purchased. He was the mortgagor, and perfectly familiar with real estate transactions. Section 2941 of the Civil Code authorized him to demand of the creditor, Dawson, at the time the debt was paid, an executed certificate of discharge of the obligation or a cancellation of the mortgage on the margin of the record thereof, but he failed to do so. On the contrary, he witnessed the delivery to Mr. Proctor of an absolute assignment of both the note and mortgage, and accompanied the assignee to the recorder's office to see that it was duly recorded. He was active in preserving the evidence of a continuing indebtedness. This conduct, and many other circumstances, support the findings of the court to the effect that it was not the intention of the parties to extinguish the indebtedness, but, upon the contrary, that they intended the transaction as a purchase of the note and mortgage by George A. Proctor and a preservation of the indebtedness secured by the mortgage which he might subsequently foreclose.

Having determined that the facts of this case show the transaction constituted a purchase of the note and mortgage by the plaintiff, and not a payment and satisfaction of the obligation at the request and for the benefit of Mr. Pyle, it follows that the authorities cited and relied upon by the appellant, to the effect that the performance of an obligation "by a party whose duty it is to perform it, or by another person on his behalf" results in extinguishing the debt, are not in point. It is therefore useless to discuss those cases. They are distinguishable from the facts of this case as suggested.

It is true as declared in section 1473 of the Civil Code that:

"Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf,

and with his assent, if accepted by the creditor, extinguishes it."

But we have held that the facts do not show that the obligation was paid or discharged by Mr. Pyle, nor by Mr. Proctor on his behalf. On the contrary, we are of the opinion the evidence indicates that Mr. Proctor purchased the note and mortgage in his own behalf.

■ It follows that when a note is paid after maturity by one who is a comaker, a surety or otherwise primarily liable for the obligation, the indebtedness is extinguished and a suit based on that instrument may not thereafter be maintained. (*Gordon* v. *Wansey*, 21 Cal. 77; *Harris* v. *King*, 113 Cal. App. 357 [298 Pac. 100]; *Crystal* v. *Hutton*, 1 Cal. App. 251 [81 Pac. 1115]; *Dodds* v. *Spring*, 174 Cal. 412 [163 Pac. 351].) ■ A different rule, however, prevails when the note is fully paid by a stranger thereto who is not obligated by the terms of the instrument.

When a note is paid after maturity by a stranger thereto, in the absence of evidence to the contrary, it is presumed the transaction constitutes a purchase of the instrument and not an extinguishment of the obligation. The question as to whether the payment of the note by a stranger thereto is a purchase or an extinguishment of the obligation depends upon the intention of the parties, to be determined from the facts and circumstances of the particular case. The preceding principle of law, as declared in 8 Corpus Juris, 588, section 826, is supported by uniform authorities. It reads:

"If a bill or a note is paid after its maturity by a stranger to the paper, it will in general be held to be a purchase and not a payment of the instrument. Whether it is a payment or a purchase is, however, a question of intention to be determined as a fact from the acts and declarations of the parties and from the surrounding circumstances."

In 8 American Jurisprudence, 478, section 830, the same principle is stated as follows:

"There is an important difference between the payment of a note and the purchase of it from the owner. Payment operates to discharge the instrument, but purchase continues it in circulation as a valid security against all parties. . . .

"Whether a transaction by which a negotiable instrument is taken up by one who is neither a party to the paper nor in any way bound for its payment constitutes a payment or

a purchase is a question of intention—one of fact rather than of law—and must be settled by the evidence. It will ordinarily be considered a purchase in the absence of anything to show a contrary intention. *A fortiori*, if it appears that it was the intention to continue the existence of the note and not to cancel it, the transaction will be sustained as a purchase, at least where such intention is coupled with a power in the holder . . . to sell and transfer the instrument. Thus, money paid by a third person to the holder of a note under an agreement that the note shall be assigned to the one making the payment is not a payment on the note.''

The foregoing principle is uniformly supported by the California authorities. (*Erkenbrecher* v. *Grant*, 187 Cal. 7 [200 Pac. 641]; *Welfare Inv. Co.* v. *Stowell*, 6 Cal. App. (2d) 444 [44 Pac. (2d) 625]; *Frank* v. *Brady*, 8 Cal. 47.) It is also supported by an unbroken line of authorities in other jurisdictions. (*Neer* v. *Neer*, (Mo. App.) [80 S. W. (2d) 240]; *Citizens Bank & Trust Co.* v. *Cook*, 9 La. App. 540 [121 So. 306]; *Briscol* v. *American So. Trust Co.*, 176 Ark. 401 [4 S. W. (2d) 912]; *Moore & Brown* v. *Rea*, 172 Ark. 1177 [288 S. W. 892]; *Federal Land Bank* v. *Neely*, 110 W. Va. 433 [158 S. E. 659]; *McDonnell* v. *Burns*, 83 Fed. 866; *Dodge* v. *Freedman's Savings & Trust Co.*, 93 U. S. 379 [23 L. Ed. 920]; *Baer* v. *Security Trust Co.*, 32 Fed. (2d) 147.)

The same principle of law was asserted in the case of *Tolman* v. *Smith*, 85 Cal. 280 [24 Pac. 743]; upon facts similar to those which exist in the present action. In that case Eunice W. Smith and her husband executed two mortgages on their Los Angeles property to William Reed, who appeared in the action as an intervener. One of the mortgages was executed to secure an unpaid portion of the purchase price of the land. The plaintiff, Tolman, also held a subsequent mortgage on the same land. The court said that ''the two mortgages set up by the intervener had priority over the plaintiff's mortgage''. At the request of Mrs. Smith, after the maturity of the notes, the intervener, Reed, paid the owner and holder of the two notes the full amounts due thereon. The instruments were then assigned to Reed, who retained possession of them. They were not canceled. Mrs. Smith then executed and delivered to Reed a new mortgage for $8,500 to cover the amounts paid by him on the original debt together with an additional loan of $4,000.

This last note and mortgage matured at a date later than the time when the action of foreclosure was commenced. The Supreme Court held that the intervener's payment of the indebtedness at the request of the mortgagor did not extinguish the obligations but that it constituted a purchase of the notes and mortgages; that the execution of the subsequent note and mortgage amounted to a mere renewal of the former notes and not a cancellation of them, and that since the date of maturity was thereby extended, it had the effect only of suspending the time for foreclosure under the mortgage. Since the last note had not matured at the time the action was commenced, it was held the intervener was not then entitled to a decree of foreclosure. Regarding the effect of paying the notes and mortgages at the request of the mortgagor, the court, however, said:

"What her (Mrs. Smith's) testimony shows is simply this: that at her request the intervenor paid to the holder of said two mortgages the sums due thereon; that they were not canceled, but were assigned to the intervenor, who retained them; and that Eunice W. Smith thereupon gave to him a new mortgage for eight thousand five hundred dollars, which was intended to cover the sums paid by him upon the old mortgages, and four thousand dollars additional, loaned by him to her. In other words, the old mortgages were retired, and a new one (having a longer period to run) substituted in their place; but there was no agreement or understanding that they should be considered satisfied, and they were not canceled, but were retained by the intervenor.

"This does not show an extinguishment of the old mortgages. Even if the intervenor had not taken an assignment at the time he paid them off, a court of equity would, for purposes of justice, apply the principle of subrogation. (*Matzen* v. *Shaeffer*, 65 Cal. 81 [3 Pac. 92]; *Gans* v. *Thieme*, 93 N. Y. 225, 232; *Yaple* v. *Stephens*, 36 Kan. 680 [14 Pac. 222]; *Bacon* v. *Goodnow*, 59 N. H. 415.) And much more is he entitled to the benefit of those securities, in view of the fact that they were not canceled, but were assigned to him. If nothing else had occurred, it is clear that he would be entitled to enforce the old mortgages."

The Dawson ranch was purchased for the Grouse Hill Land Company and 1724 acres thereof were conveyed to the corporation, subject to the mortgage to secure the unpaid por-

tion of the purchase price. The appellant is liable for that indebtedness, to the extent, at least, of the value of the mortgaged land to which it held title. The decree of foreclosure does not authorize a deficiency judgment to be entered against the corporation. The corporation was not harmed by a release of the 213.71-acre tract. The last-mentioned tract was not included in the foreclosure proceedings. If the corporation claims title or an interest in that tract it may be determined in a proper action.

The obligation was not extinguished by the transfer of the note and mortgage to George A. Proctor. The judgment is therefore affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1939.